IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN W. BEVER,<br><br>               **Plaintiff**,<br>     v.<br><br>CAL-WESTERN RECONVEYANCE CORP., CITIMORTGAGE, INC., and MORTGAGE ELECTRONIC REGISTRATION SERVICES, INC.,<br><br>               **Defendants.** | 1:11-CV-1584  AWI SKO<br><br>ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, DEFENDANTS' MOTION TO SUPPLEMENT, AND PLAINTIFF'S MOTION TO STRIKE<br><br>(Doc. No. 58, 64) |

     This is a mortgage related case brought by Plaintiff Glenn Bever ("Bever") against Cal-Western Reconveyance Corp. ("Cal-Western"), Citi Mortgage, Inc. ("Citi"), and Mortgage Electronic Registration Services, Inc. ("MERS").  The Court previously granted a motion for a temporary restraining order and set a briefing schedule for preliminary injunction.  See Doc. No. 19.  The briefing on Bever's motion for a preliminary injunction has been received.  For the reasons that follow, the Court will grant Bever's motion for a preliminary injunction.

*Background*

     In June 2003, Bever obtained a loan for approximately $212,000 on real property located at 466 West Tenaya, Clovis, California.  The loan was secured by deed of trust.  The deed of trust identified First Pacific Financial, Inc. as the lender, Carriage Escrow, Inc. as the trustee, and MERS as the beneficiary and nominee of First Pacific Financial.  The deed of trust was recorded in the Fresno County Recorder's Office on June 20, 2003.

     On March 20, 2006, Bever and his wife deeded the real property to themselves in the capacity of trustees of The Bever Family Trust.

On May 27, 2011, an assignment of deed of trust was recorded in the Fresno County Recorder's Office.  The assignment assigns MERS's beneficial interest in the deed of trust to Citi.

On June 1, 2011, a Substitution of Trustee was executed by Citi.  This document substituted Cal-Western as the trustee.  The Substitution of Trustee was recorded in the Fresno County Recorder's Office on June 28, 2011.

On June 3, 2011, Cal-Western mailed a notice of default and election to sell to Bever.

On September 6, 2011, Cal-Western mailed Bever a notice of trustee's sale, which set sale of Bever's property for September 27, 2011.  The sale was later moved to October 27, 2011.

On October 26, 2011, the Court granted Bever's application for a temporary restraining order and set a briefing schedule for a preliminary injunction.

*Legal Standards*

    1.    Rule 65

Federal Rule of Civil Procedure 65 governs preliminary injunctions.  In re Lorillard Tobacco Co., 370 F.3d 982, 985 (9th Cir. 2004).  A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008); Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).  If a moving party has only shown "serious questions going to the merits," then an injunction may issue if the moving party meets the irreparable harm requirement and the public interest requirement, and shows that the balance of hardships "tips sharply" towards his favor.  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1132, 1135 (9th Cir. 2011).  However, if a moving party fails to show that he has "some chance on the merits," then no injunction will issue.  Developmental Servs. Network v. Douglas, 666 F.3d 540, 544 (9th Cir. 2012).  "Injunctive relief . . . must be tailored to remedy the specific harm alleged."  Park Vill., 636 F.3d at 1160.  Despite the apparent mandatory language of Rule 65(c), the Ninth Circuit has held that "Rule 65(c) invests the district court with discretion as to the amount of

security required, if any." Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009). Thus, depending on the circumstances, a court may dispense with the requirement of a security before issuing an injunction. Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011).

### 2. California Civil Code § 2923.5

A notice of default cannot be filed until 30 days after the mortgage servicer/lender has met the requirements of California Civil Code § 2923.5. See Cal. Civ. Code § 2923.5(a); Mabry v. Superior Court, 185 Cal.App.4th 208, 221 (2010). Section 2923.5 requires that "a mortgagee, trustee, beneficiary, or authorized agent must contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure or satisfy due diligence requirements before a notice of default is filed." Intengan v. BAC Home Loans Servicing LP, 214 Cal.App.4th 1047 (2013); Skov v. U.S. Bank National Assn., 207 Cal. App. 4th 690, 695-96 (2012). Section 2923.5 does not require the lender to modify the loan. Skov, 207 Cal.App.4th at 695-96; Mabry, 185 Cal.App.4th at 214. The only remedy for noncompliance with § 2923.5 is the postponement of the foreclosure sale until there has been compliance with § 2923.5. Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107 (E.D. Cal. 2011); Mehta v. Wells Fargo Bank, N.A., 737 F.Supp.2d 1185, 1194 (S.D. Cal. 2011); Davenport v. Litton Loan Servicing, L.P., 725 F.Supp.2d 862, 877 (N.D. Cal. 2010); Skov, 207 Cal.App.4th at 696; Mabry, 185 Cal.App.4th at 214.

*Court's Order Issuing Temporary Restraining Order*

The Court issued a restraining order based primarily on declaration submitted by Bever that deal in part with § 2923.5 compliance. The order explained in relevant part:

> . . . disregarding Plaintiff's other claims, Plaintiff has shown a likelihood of success on his claims under [§ 2923.5]. As part of the Renewed Motion for Temporary Restraining Order, Plaintiff submits a declaration that no Defendant contacted him before the Notice of Default was filed and no Defendant ever contacted him for the purpose of exploring options to avoid foreclosure. In addition, Plaintiff states under penalty of perjury that he was never served with the Notice of Default. Civil Code § 2923.5 requires that, 30 days before a notice of default is field, the mortgagee, beneficiary, or authorized agent "shall contact the buyer in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a).

Doc. No. 19.

*Defendant's Opposition*

Citi argues that the substitution of trustee and the notice of default and election to sell were mailed and received by Bever.[1] The Complaint admits the mailing, and Citi has submitted delivery confirmations from the United States Post Office. As to § 2923.5, Citi argues that the pre-2013 version of § 2923.5 is the version to be analyzed. Citi argues that the declaration of Elina Alsiweadi conclusively shows that Citi contacted Bever more than 30 days before filing the notice of default in order to explore options to foreclosure and to comply with § 2923.5. Alternatively, Citi argues that a security of the full amount of the indebtedness should be required and that Bever should be required to make monthly payments that are due under the deed of trust.

*Plaintiff's Reply*

Bever argues that it is improper to take judicial notice of certain documents. He also argues that the declaration of Alsiweadi has not sufficiently been shown to be made with personal knowledge and is hearsay. Bever reiterates his declaration that no one contacted him for purposes of § 2923.5. Finally, Bever agrees that the pre-2013 version of § 2923.5 applies.

*Discussion*

As an initial matter, Bever is unlikely to prevail on any claim that is based on an alleged failure to receive the notice of default. The FAC acknowledges that the notice was mailed to Bever and describes the cover letter. See FAC ¶ 52. Further, the declaration of mailing and the United States Post Office delivery confirmation slips show that the notice of default and the substitution of trustee were delivered to the deed of trust property, which is alleged to be Bever's homestead. See Doc. No. 20. Further, there is no doubt that Bever has now received all notices, and that he received those notices in enough time to act. See Miller & Starr, 4 Cal. Real Est. § 10:199 (3d ed.). Therefore, no preliminary injunction will issue on the basis of an alleged failure to receive a notice of default and notice of substitution of trustee. See Hutchful v. Wells

---

[1] Citi's first opposition consisted of a declaration and a request for judicial notice. See Doc. No. 20. On March 28, 2013, Citi filed a motion to file a supplemental brief, a memorandum of points and authorities and a request for judicial notice. See Doc. Nos. 58-61. On April 8, 2013, Bever filed an opposition to Citi's request, and on April 10, 2013, filed a motion to strike Citi's proposed supplemental points and authority. See Doc. Nos. 62, 64. Citi's request for judicial notice is identical to its previous request. Cf. Doc. No. 20 with Doc. No. 61. Because the result of the motion will not change irrespective of whether Citi's supplemental points and authorities are considered, the Court will grant Citi's motion to consider the supplemental authorities and deny Bever's motion to strike.

Fargo Bank, N.A., 471 Fed. Appx. 693, 694-95 (9th Cir. 2012) (affirming denial of preliminary injunction were multiple proof of mailings were submitted and the mortgagee had received sufficient notice to prevent the foreclosure sale).

  As for § 2923.5, the June 2011 notice of default in this case states that Bever became delinquent in his payments beginning in February 2011.  The declaration of Citi employee Elina Alsiweadi indicates that Citi made telephone contact with Bever twice in 2009 (June 16 and September 15) to assess his financial situation and explore options to avoid foreclosure.[2]  Bever hung up on Citi personnel three times in 2010 (March 9, April 15, and May 7).  Citi left a message for Bever on June 1, 2010, called without a message on June 3, 2010, and spoke to Bever about his delinquency on June 4, 2010.  Citi left further messages for Bever on June 8, 9, and 10, 2010.  Citi attempted to make telephone calls to Bever more than 20 times between June 24 and August 9, 2010.  Citi personnel spoke to Bever on August 10, October 8, and November 9, 2010.  In those calls, Bever advised that the reason for delinquency was either a misapplication of payment, slow business, or slow receivables.  On February 11, 2011, Citi personnel contacted Bever over the telephone to assess his financial situation and explore options to avid foreclosure.  On February 15, 2011, Citi personnel again contacted Bever over the telephone to assess his financial situation and explore options to avoid foreclosure.  See Alsiweadi Dec. ¶¶ 7-12.

  Bever's declaration states that, "Defendants failed to notify or initiate contact with Plaintiff to discuss available options prior to the recording of the Notice of Default in violation of [§ 2923.5]."  Doc. No. 18 at ¶ 13.  Bever's only substantive response to the Alsiweadi declaration is found in the opposition to supplemental briefing.  Bever argues that the Alsiweadi declaration does not contradict his earlier declaration that no Defendant contacted him.

  It is apparent that Citi either spoke to Bever or attempted to speak to Bever on multiple dates concerning the loan and delinquent payments.  There are two telephone conversations in 2009 that track the language of § 2923.5.  However, conversations in 2009 could not take into

---

[2] Alsiweadi declares that she reviewed the loan file pertaining Bever, including the entries made in the loan file.  Alsiweadi declares that Citi's practice is for personnel to make servicing notes whenever there is an interaction with a mortgagee.  All interactions related to a loan are to be documented, and the documentation is to be made at or near the time of the interaction.  See Alsiweadi Dec. ¶¶ 3-5.

account circumstances that may have changed between 2009 and 2011, and could not relate to a failure to pay from February 2011 forward. Further, the notice of default does not allege delinquencies dating back to 2009. The Alsiweadi declaration does not show that the 2009 telephone calls met the requirements of § 2923.5 with respect to the June 2011 notice of default.

There are also many telephone conversations in 2010 between Defendants and Bever. However, the Alsiweadi declaration does not indicate that these calls were to assess options to avoid foreclosure. Instead, the calls all appear to deal with delinquent payments and the reasons for the delinquency. Asking where a payment is, or why a payment is delinquent, does not of itself constitute an assessment of Bever's financial status or an assessment of available options to avoid foreclosure. Moreover, the notice of default does not relate to any delinquent payments in 2010. The Alsiweadi declaration does not show that the 2010 contacts or attempted contacts met the requirements of § 2923.5 with respect to the June 2011 notice of default.

This leaves only the two February 2011 telephone calls. The Notice of Default does deal with defaults beginning as of February 2011. Further, the indication from Alsiweadi is that these calls would meet the requirements of § 2923.5, because Alsiweadi's description of the calls tracks the language of the statute. However, it is notable that the description of these call only tracks the language of § 2923.5. In other descriptions of calls with Bever, there is an indication about what Bever said, i.e. that he was delinquent because business was slow. There is no actual description of what options were explored or what Bever's financial condition happened to be. Further, and again, Bever's declaration indicates that he did not receive telephone calls about exploring options prior to the filing of the Notice of Default.

It is unclear how Bever's declaration and the two February 2011 entries in Citi's loan file can be true. If Bever is correct, then there was not compliance with § 2923.5. If Citi is correct, then there likely was compliance. Given the competing declarations, and considering that the February 2011 entries merely track the language of § 2923.5 without detail, the Court finds that Bever has shown at least some chance of succeeding on the merits of this claim. See Douglas, 666 F.3d at 544; Cottrell, 632 F.3d at 1135.

With respect to the remaining considerations, the Court's prior analysis generally applies.

The loss of one's home is considered an irreparable harm.  See De Vico v. United States Bank, 2012 U.S. Dist. LEXIS 155622, *21-*22 (C.D. Cal. Oct. 29, 2012); Magana v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 120322, *5-*6 (N.D. Cal. Oct. 18, 2011).  Further, the loss to Bever of his home is a greater hardship than the loss to Citi caused by a delay in foreclosure. De Vico, 2012 U.S. Dist. LEXIS 155622 at *22-*23.  So much so, that this factor weighs sharply in Bever's favor.  See id.  Also, the public interest rests in ensuring that foreclosing entities follow the requirements of § 2923.5.  De Vico, 2012 U.S. Dist. LEXIS 155622 at *22-*23; Magana, 2011 U.S. Dist. LEXIS 120322 at *5-*6.  Accordingly, the *Winter* factors support the issuance of an injunction.  See Cottrell, 632 F.3d at 1132, 1135.

　　　　The only remaining issue is whether a security should be imposed under Rule 65(c).  It appears that Bever has been living in his home rent free since February 2011, despite a valid deed of trust.  Further, the only remedy that is available to Bever is a delay in proceedings until § 2923.5 can be satisfied.  See Argueta, 787 F.Supp.2d at 1107; Mehta, 737 F.Supp.2d at 1194; Davenport, 725 F.Supp.2d at 877; Skov, 207 Cal.App.4th at 696; Mabry, 185 Cal.App.4th at 214.  Under these circumstances, the Court will require a security.

　　　　Despite Citi's request, the Court will not require the entire amount owed on the loan to be the amount of the security.  Such an amount is excessive.  See DeVico, 2012 U.S. Dist. LEXIS 155622 at *27.  Further, requiring a security for the full amount owed would be tantamount to requiring tender of the entire amount owed, which is not necessary in § 2923.5 actions.  See Mabry, 185 Cal.App.4th at 213.  Instead, the Court will require Bever to make monthly payments.  See De Vico, 2012 U.S. Dist. LEXIS 155622 at *26-*28; Magana, 2011 U.S. Dist. LEXIS 120322 at *6-*7.

　　　　Based on the notice of default, Bever owed $6,862.60 from February 1 to June 3, 2011. Ignoring likely penalties that were included, for five months of missed payments to total $6,862.60, Bever would have been making monthly payments of $1,372.52.  Considering the pendency of this litigation, the years in which Bever has been living in his home without making payments, and the only remedy available to Bever, the Court will require Bever to submit a monthly security of $1,400.00, but will set the initial security payment at $2,800.00.

If Bever misses a security payment, then the preliminary injunction will be dissolved. If Citi presents additional evidence that it complied with § 2923.5 in 2011, then the Court will consider dissolving the preliminary injunction. If Citi presents evidence that it has now complied with § 2923.5, then the Court likely will dissolve the preliminary injunction.[3] Finally, as part of the preliminary injunction, the Court will require Bever to accept communications from Citi if the communications are intended to meet the requirements of § 2923.5.

## CONCLUSION

Bever has demonstrated that he has a chance of succeeding because his declaration is contrary to the declaration of Alsiweadi. Further, the remaining factors to consider under *Winter* weigh in Bever's favor. The balance of hardships, in particular, weighs heavily in Bever's favor because of the unique nature of a home. Because the *Winter* factors sufficiently weigh in favor of Bever, a preliminary injunction will issue.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for a preliminary injunction is GRANTED;
2. Defendant Citi and its agents, servants, and employees are enjoined from permitting or conducting a foreclosure sale with respect to the real property located at 466 West Tenaya Avenue, Clovis, California, 93612;[4]
3. Plaintiff is required to submit a $2,800 security to the Court no later than 4:00 p.m. on October 11, 2013, and thereafter submit a $1,400 security on the eleventh day of each month that this litigation is pending;
4. If Plaintiff fails to submit a timely security, this Preliminary Injunction shall dissolve;

---

[3] In each instance in which Citi presents new evidence, Bever will be given the opportunity to respond.

[4] There are three named defendants in this case. However, following the Court's ruling on Citi and MERS's motion to dismiss, Citi is the entity that determines whether foreclosure will occur. Because the Court enjoins Citi, there is no need to enjoin MERS or Cal-Western.

5. Citi may submit additional evidence that demonstrates either compliance with California Civil Code § 2923.5 in 2011, or may submit evidence demonstrating current compliance with § 2923.5, in order to dissolve this preliminary injunction;

6. Plaintiff is required to communicate in good faith with Citi with respect to any attempts by Citi to currently comply with California Civil Code § 2923.5;

7. Defendants' motion to file a supplemental memorandum (Doc. No. 58) is GRANTED; and

8. Plaintiff's motion to strike (Doc. No. 64) is DENIED.

IT IS SO ORDERED.

Dated:   October 1, 2013

SENIOR DISTRICT JUDGE