# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

GLENN W. BEVER,

               Plaintiff,

     v.

CITIMORTAGE, INC, et al.,

               Defendants.

_____/

Case No.  1:11-cv-01584-AWI-SKO

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND**

(Doc. Nos. 91, 98)

## I.   INTRODUCTION

This is a mortgage-related case brought by Plaintiff Glenn Bever ("Plaintiff") against Cal-Western Reconveyance Corp. ("Cal-Western"), Citi Mortgage, Inc. ("Citi"), and Mortgage Electronic Registration Services, Inc. ("MERS").  On February 7 and on February 20, 2014, Plaintiff filed a motion to amend the complaint to add eleven new claims and name four new defendants (the Federal National Mortgage Association; Lehman Brothers Bank, FSB; Lehman Brothers Holdings, Inc.; and First Pacific Financial, Inc.), as well as reassert claims against MERS and Cal-Western.  On March 12, 2014, Citi filed a brief in opposition (Doc. 101); on March 19, 2014, Plaintiff filed a reply brief (Doc. 102).  For the reasons set forth below, Plaintiff's motion to amend is DENIED.

## II.   FACTUAL BACKGROUND

In June 2003, Plaintiff obtained a loan for approximately $212,000 for the purchase of real property located in Fresno County (the "Property").  The loan was secured by a Deed of Trust. The Deed of Trust identified First Pacific Financial, Inc. ("First Pacific") as the lender, Carriage Escrow, Inc. as the trustee, and MERS as the beneficiary and nominee of First Pacific.  The Deed of Trust was recorded in the Fresno County Recorder's Office on June 20, 2003.

On March 20, 2006, Plaintiff and his wife deeded the Property to themselves in their capacity as trustees of "The Bever Family Trust."

On May 27, 2011, an assignment of the deed of trust was recorded in the Fresno County Recorder's Office.  The document purported to assign MERS' beneficial interest in the Deed of Trust to Citi.  The assignment is signed by Brenda Enriquez as an Assistant Secretary of MERS. On June 1, 2011, a Substitution of Trustee form was executed by Citi.  This document substituted Cal-Western as the trustee on the Deed of Trust in place of Carriage Escrow, Inc.   The Substitution of Trustee was recorded in the Fresno County Recorder's Office on June 28, 2011.

On June 3, 2011, a notice of default and election to sell was sent to Plaintiff by Cal-Western.  On September 6, 2011, Cal-Western sent Plaintiff a notice of trustee's sale, which set the sale of the Property for September 27, 2011.  The sale was later moved to October 27, 2011.  On September 23, 2011, a second assignment of the Deed of Trust was recorded in the Fresno County Recorder's Office, assigning Citi's interest in the Deed of Trust to Fannie Mae, also known as the Federal National Mortgage Association. (*See* Doc. 99, Proposed Third Amended Complaint ("TAC"), p. 85, Exhibit I.)

## III.   PROCEDURAL BACKGROUND

### A.   Plaintiff's Original Complaint Filed On September 20, 2011

On September 20, 2011, Plaintiff filed suit against Cal-Western, Citi, and MERS alleging claims for (1) quiet title; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"); (3) violation of the Real Estate Settlement Procedures Act ("RESPA") pursuant to 12 U.S.C. § 2605; (4) unjust enrichment; and (5) "fraud and injurious falsehood."  (Doc. 1.)

Plaintiff alleged a number of irregularities and violations by Cal-Western, Citi, and MERS in the foreclosure process.   Plaintiff alleged that Cal-Western failed, in a "loan payment confirmation" letter dated June 13, 2010, to state the name of the creditor to whom the debt was owed and Plaintiff's right to dispute the debt within 30 days, in violation of the FDCPA pursuant to 15 U.S.C. § 1692g(a)(2).  With his complaint, Plaintiff submitted a verification request he sent to Cal-Western, which references a letter from Cal-Western dated June 15, 2011.  The letter from Cal-Western included a statement indicating that it was "an attempt to collect a debt."  Plaintiff alleged that Cal-Western failed to verify the debt as requested by Plaintiff and failed to cease collection after his request, in contravention of Section 1692g(b) of the FDCPA.

Plaintiff also asserted that, with respect to the notice of default he received, Cal-Western violated Sections 1692e and 1692f of the FDCPA because it did not actually possess the promissory note secured by the Deed of Trust and therefore deceptively and unfairly sought collection of the debt.  Additionally, Plaintiff alleged Citi untimely and inadequately responded to a "Qualified Written Request" made by Plaintiff, violating 12 U.S.C. §2605(e).

Ostensibly pursuant to a theory of unjust enrichment, Plaintiff alleged that federal bailout money or other means were used to repay Plaintiff's loan, and that collection of Plaintiff's debt by Cal-Western, Citi, and MERS would unjustly enrich them.

Finally, Plaintiff alleged that MERS acted to conceal its true identity and purpose, thereby inducing Plaintiff into a fraudulent loan.   Plaintiff challenged MERS' authority to make an assignment to Citi and claimed MERS knew the assignment would wrongly divest Plaintiff of title to the property.

Plaintiff filed a motion for a temporary restraining order precluding Cal-Western, Citi, and MERS from selling the Property pursuant to the Deed of Trust.  The request for a temporary restraining order was denied.

On October 12, 2011, Citi and MERS filed a joint motion to dismiss the complaint.  (Doc. 13.)  Plaintiff filed a renewed motion for a temporary restraining order, which was granted.  (Doc. 19.)  On March 14, 2012, Cal-Western filed a motion to dismiss.  (Doc. 31.)

3

**B.      The Court's Order Dismissing Plaintiff's Original Complaint with Leave to Amend**

On June 28, 2012, the Court issued an order granting Citi and MERS' joint motion to dismiss as well as Cal-Western's Motion to Dismiss. (Doc. 39.) With respect to Plaintiff's claim against Cal-Western under the FDCPA, the Court found it was not cognizable because Plaintiff failed to allege that Cal-Western: (1) acquired the debt when it was in default, as defined by the Deed of Trust or relevant California law, and (2) took on that debt solely for the purpose of facilitating collection of the debt. As Plaintiff had alleged neither element, Cal-Western's motion to dismiss as to the FDCPA claim was granted.

As to Plaintiff's RESPA claim against Citi, the Court determined that 12 U.S.C. § 2605(k)(1)(D), under which Plaintiff appeared to be alleging a violation, was not effective at the time Plaintiff made his Section 2605(k) request. Further, even to the extent that Section 2605(k) was in effect at the time of the complained-of events, Plaintiff failed to plead any actual damage under RESPA, which is a necessary element.

Regarding Plaintiff's unjust enrichment claim, the Court noted such a claim was an action in quasi-contract and not cognizable in the face of a valid and enforceable contract between the parties. The Court concluded that the Deed of Trust between the parties precluded an unjust enrichment theory of recovery, and the claim was dismissed.

Plaintiff's claim for fraud against MERS was dismissed for lack of specificity under Federal Rule of Civil Procedure 9(b). Plaintiff's claim for injurious falsehood was deemed similar to the tort of defamation. However, because Plaintiff's Deed of Trust clearly granted MERS the authority to assign the lender's interest in the Deed on behalf of the lender, Plaintiff failed to provide facts to support a claim that MERS knew it was making a false statement or acting with reckless disregard of the truth, which are necessary elements of an injurious falsehood claim.

Finally, Plaintiff's claim for quiet title was dismissed without prejudice because Plaintiff had failed to allege that he was the rightful owner of the property.

Plaintiff was granted 21 days to amend his complaint.

4

**C.      Plaintiff's First Amended Complaint Filed on July 23, 2012**

On July 23, 2012, Plaintiff filed a First Amended Complaint ("FAC").  (Doc. 42.)  Plaintiff again named MERS, Citi, and Cal-Western as defendants and stated the following claims: (1) quiet title; (2) violations of the FDCPA under 15 U.S.C. §1692; (3) violations of RESPA under 12 U.S.C. § 2605; (4) unjust enrichment; and (5) fraud and injurious falsehood.

On August 7, 2012, Cal-Western filed a motion to dismiss (Doc. 45); on August 9, 2012, MERS and Citi filed a joint motion to dismiss.  (Doc. 47.)

**D.      The Court's Order Granting Defendants' Motions to Dismiss the FAC**

**1.      Citi and MERS' Motion to Dismiss**

As to the quiet title action against MERS and Citi, the Court determined Plaintiff's claim rested largely on two premises – that MERS did not have the authority or the ability to assign the beneficial interest in the Deed of Trust, and MERS did not assign its interest in the Deed of Trust to Citi.  As to the first premise, the Court noted California courts have routinely recognized that MERS, as a nominee and beneficiary under a deed of trust, has the authority to assign its interest in the deed of trust and that such assignment is valid.  (Doc. 75, 5:20-25.)  Here, "[b]ecause the deed of trust in this case identifies MERS as a nominee and beneficiary, and provides MERS the ability to exercise any and all interests, MERS had the authority to assign the beneficial interest in Bever's deed of trust." (Doc. 75, 6:1-3.)

Relating to the second premise, the FAC did not plausibly show that MERS' assignment to Citi was ineffective.  As there were no plausible allegations showing that the transfer from MERS to Citi was invalid, there were no plausible allegations that Citi did not have a beneficial interest in Bever's Deed of Trust.  As a result, Plaintiff's claim was subject to the tender rule, and the Court concluded Plaintiff had not made a credible tender offer.  Plaintiff's quiet title claim was dismissed with prejudice.  (Doc. 75, 9:3.)

As to the RESPA claim pursuant to Section 2605 against Citi, the Court determined Plaintiff had failed to cure the defects of his initial complaint:  the allegations of the FAC "again continue to appear to rely on §2605(k)(1)(D), even though the Court explained that that section had no application to this case." (Doc. 75, 9:20-21.)  Further, the letter Plaintiff alleged

1    constituted a Qualified Written Request asked only about the owner of the loan, rather than any

2    request concerning payments or fees – thus, the letter was not a Qualified Written Request.

3    Finally, Plaintiff again failed to sufficiently allege actual damages.  This claim was dismissed with

4    prejudice.  (Doc. 75, 10:27-28.)

5          Plaintiff's claim for unjust enrichment against MERS and Citi was also dismissed because

6    the Court found the Deed of Trust indicated Plaintiff "owe[d] money and regular payments under

7    the loan and deed of trust.  When there is a valid and enforceable contract between the parties,

8    unjust enrichment is not cognizable."   (Doc. 75, 11:23-25.)   This claim was dismissed with

9    prejudice.  (Doc. 75, 12:7-8.)

10         Regarding Plaintiff's claim for fraud and injurious falsehood against MERS, the Court

11   determined that the prior deficiencies of the original complaint were not corrected, and the FAC

12   did not sufficiently allege each of the necessary elements of fraud.  This claim was dismissed with

13   prejudice.  (Doc. 75, 13:17-18.)

14         Finally, although there was no formal cause of action in the original complaint pursuant to

15   California Civil Code § 2923.5, the Court held there were allegations in the FAC that "directly

16   address[ed] § 2923.5."   A notice of default cannot be filed until 30 days after the mortgage

17   servicer/lender has met the requirements of Section 2923.5.   Section 2923.5 requires that "a

18   mortgagee, trustee or beneficiary, or authorized agent must contact the borrower in person or by

19   telephone in order to assess the borrower's financial situation and explore options for the borrower

20   to avoid foreclosure or satisfy due diligence requirements before a notice of default is filed."

21   *Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047 (2013).

22         The Court noted that it had granted a temporary restraining order on the basis of a

23   declaration from Plaintiff indicating he had not been contacted by Citi prior to the filing of the

24   notice of default.  (Doc. 19.)   The FAC quoted from Section 2923.5 and alleged that no one

25   contacted Plaintiff about this matter, thus the Court construed the allegations as stating a claim

26   pursuant to Section 2923.5.  (FAC, ¶ 51-2.)   Because Citi was the only entity attempting to

27   foreclose and because the briefing on Plaintiff's motion for a preliminary injunction showed that

28

Citi was the entity that previously made contact or attempted to make contact with Plaintiff about his payments, the claim was construed to be alleged only against Citi.  (Doc. 75, 14:8-17.)

### 2.    Cal-Western's Motion to Dismiss

On October 2, 2013, in conjunction with its consideration of MERS and Citi's joint motion to dismiss, the Court found as follows with regard to Cal-Western's motion to dismiss:

> There are three causes of action alleged in the FAC against Cal-Western.  Quiet title, unjust enrichment, and 15 U.S.C. § 1692.  Cal-Western is the only Defendant under Bever's 15 U.S.C. § 1692 cause of action.  As discussed above, the quiet title and unjust enrichment causes of action are invalid.  However, on June 28, 2013, Cal-Western filed a notice of bankruptcy.  Pursuant to 11 U.S.C. § 362, an automatic stay is in place as to Cal-Western.  Because of the automatic stay, the Court cannot address the 15 U.S.C. § 1692 claim.  A status conference with the Magistrate Judge has been set for December 5, 2013.  The parties will discuss further proceedings, including periodic status reports, with the Magistrate Judge at that time.  In the mean[t]ime, the Court will stay Cal-Western's motion to dismiss.

(Doc. 75, 14:20-28.)

### E.    Plaintiff's Request for a Preliminary Injunction

On October 2, 2013, the Court granted Plaintiff's request for a preliminary injunction enjoining Citi and its agents, servants, and employees from permitting or conducting a foreclosure sale with respect to the Property.  (Doc. 76.)  Plaintiff was required to submit a monthly security on the eleventh day of each month that the litigation is pending.  (Doc. 76.)  Citi was permitted to submit additional evidence demonstrating compliance with California Civil Code § 2923.5 in 2011 or evidence demonstrating current compliance with Section 2329.5.  (Doc. 76.)  Currently, the preliminary injunction remains in place.

### F.    Scheduling Conference

A scheduling and status conference was held on December 5, 2013.  Plaintiff appeared telephonically pro se, and Jillian Benbow, Esq., appeared telephonically on behalf of Citi.  (Doc. 87.)  The parties agreed that the litigation could proceed against Citi, while the case against Cal-Western would remain stayed pursuant to automatic stay under 11 U.S.C. § 362.  (Doc. 87, 2:1-4.)

The Court set deadlines for the case against Citi, including a deadline to amend the pleadings, which was set for February 7, 2014.  (Doc. 87.)  These scheduling deadlines were given

1  to the parties during the course of the scheduling conference.  A scheduling order was issued on

2  December 6, 2013, but due to clerical error, was not served on Plaintiff at that time.[1]

3  **G.      Plaintiff's Motion to Amend the Complaint**

4          On February 7, 2014, Plaintiff filed a motion to amend the complaint and filed a proposed

5  second amended complaint.  (Docs. 91, 92.)  Because Plaintiff's motion was not properly noticed

6  and set for a hearing, Plaintiff was ordered to file and serve a new notice of motion setting forth

7  the proper time and date for a hearing on the motion to amend.  (Docs. 93, 97.)  On February 20,

8  2014, Plaintiff filed an amended motion and noticed a hearing for March 26, 2014; he also filed a

9  proposed "Third Amended Complaint."  (Docs. 98, 99.)

10         This action currently proceeds on only one claim against Citi pursuant to California Civil

11  Code § 2395.5.  Plaintiff seeks to amend the complaint to add eleven additional claims and to add

12  as defendants MERS, Fannie Mae, Lehman Brothers Bank, FSB, Lehman Brothers Holdings, Inc.

13  (collectively, "Lehman Brothers"), and First Pacific.

14         Plaintiff's request to amend is based, in part, on his allegation that an allonge[2] to the

15  original Note of indebtedness on the Property indicates that the Note was transferred from First

16  Pacific to Lehman Brothers and that the Note remains with Lehman Brothers, or it was "probably

17  sold" to Aurora Bank, FSB.  (Doc. 99, Proposed TAC, ¶ 2.)  Plaintiff also contends that, as it

18  pertains to the Deed of Trust, First Pacific, MERS, and Citi were all dissolved, suspended, or

19  surrendered at the time that assignments of the Deed of Trust were negotiated, and thus the

20  assignments of the Deed of Trust from MERS to Citi and then from Citi to Fannie Mae are invalid.

21  (Doc. 99, Proposed TAC, ¶ 2.)  Additionally, Plaintiff offers a copy of a second assignment of the

22  Deed of Trust in 2011 from Citi to Fannie Mae that he contends fails to state the title of the person

23  executing the document or the corporate or representative capacity of that person, rendering that

24  assignment invalid.  (Doc. 99, Proposed TAC, ¶ 2.)

25

26

27  [1] The scheduling order has since been served on Plaintiff.

28  [2] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Black's Law Dictionary (9th ed. 2009) (West).

1      Based on these and other facts already alleged, Plaintiff seeks to reassert his dismissed-

2  with-prejudice quiet title claim against First Pacific, Citi, Fannie Mae, and Lehman Brothers.

3  Plaintiff also seeks to reassert his claim under the FCDPA against Citi, and to restate his pending,

4  but stayed, FCDPA claim against Cal-Western.  Plaintiff's fourth cause of action proposes a new

5  claim pursuant to Truth in Lending Act ("TILA") against Citi.  Plaintiff's proposed fifth, sixth, and

6  eighth causes of action are for cancellation of a voidable contract under the California Revenue &

7  Tax Code §§ 23304.1 and 23305A and for violation of the California Corporation Code §

8  191(C)(7) against the "Foreclosing Defendants," whom Plaintiff identifies as First Pacific, Cal-

9  Western, Citi, MERS, and Fannie Mae.  (Doc. 99, Proposed TAC, ¶ 66.)  Plaintiff's seventh cause

10  of action seeks to render void or cancel the first assignment of the Deed of Trust on the Property

11  as to the Foreclosing Defendants.  Plaintiff's proposed ninth cause of action is for breach of the

12  implied covenant of good faith and fair dealing against the Foreclosing Defendants.  Plaintiff's

13  proposed tenth cause of action is for violation of the California Business & Professions Code

14  Section 17200 against the Foreclosing Defendants for fraudulent business practices.  Plaintiff's

15  proposed eleventh cause of action is for slander of title against the Foreclosing Defendants.

16  Finally, Plaintiff's proposed twelfth cause of action[3] is for civil conspiracy under 18 U.S.C. § 1965

17  against the Foreclosing Defendants.

18                               **IV.    DISCUSSION**

19  **A.    Status of Cal-Western and Discovery**

20      Cal-Western filed bankruptcy proceedings; thus the case as to Cal-Western is stayed.

21  (Doc. 75, 14:20-28.)   Although Plaintiff contends "discovery was stayed until the motion to

22  [d]ismiss [filed by Cal-Western] was ruled on" (Doc. 102, p. 2), this is an incorrect statement of

23  the posture of the case.  As discussed at the December 5, 2013, scheduling conference, while the

24  motion to dismiss filed by Cal-Western is stayed, the case is proceeding against Citi on the one

25  claim the district court deemed cognizable.  Discovery between Plaintiff and Citi has been

26  proceeding since December 6, 2013, and non-expert discovery will close on June 6, 2014.  (Doc.

27  87.)

---

28  [3] Plaintiff identifies two "eleventh" causes of action.  The final claim, however, is the twelfth cause of action.

**B.      Plaintiff has not established good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)**

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions.  Fed. R. Civ. P. 16(b)(1)-(3).  Once in place, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension."  *Id*. (internal citation and quotation marks omitted).

Good cause may be found to exist where the moving party shows, for example, that it: (1) diligently assisted the court in recommending and creating a workable scheduling order, *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order, *see Johnson*, 975 F.3d at 609, and (3) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order, *see Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996). *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).  "If [the] party was not diligent, the inquiry should end."  *Johnson*, 975 F.2d at 609.  If the Court finds there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted.  *Jackson*, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [*Johnson*], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

Plaintiff filed a motion to amend the complaint on February 7, 2014, but it was not properly noticed.  The Court ordered Plaintiff to file and serve a new notice of motion in compliance with Local Rule 230(b).  (Docs. 93, 97.)  On February 20, 2014, Plaintiff refiled his motion to amend, but proposed a complaint different from that attached to his February 7, 2014,

1   motion to amend.  Accordingly, Plaintiff's proposed amendment was not filed until February 20,

2   2014.

3          As Plaintiff notes, due to clerical error, the scheduling order was not served on him timely

4   following the scheduling conference.  Nevertheless, Plaintiff appeared at the scheduling

5   conference and was provided with the deadline to amendment to the pleadings.  Because Plaintiff

6   filed his original motion to amend the pleadings on February 7, 2014, and on February 20, 2014, it

7   was noticed and set for a hearing on March 26, 2014, the Court construes Plaintiff's motion as

8   timely under the February 7, 2014, deadline to amend the pleadings.

9          Although Plaintiff's request to amend his complaint is considered timely under the

10  scheduling order, the broad scope of the requested amendment would nonetheless require

11  extensive modification to the existing schedule, including the trial date.  Thus, the Court considers

12  whether Plaintiff has established good cause to permit modification to the scheduling order that

13  will be necessitated by the newly proposed amendment.  *See Paz v. City of Aberdeen*, No C13-

14  5104 RJB, 2013 WL 6163016, at *3 (W.D. Wash. Nov. 25, 2013) (although the court had not set a

15  deadline to amend the pleadings, an amendment that would necessarily require amendment to the

16  Rule 16(b) scheduling order is governed by the good cause standard).

17         Plaintiff seeks to amend the complaint, despite that the original complaint was filed in

18  September 2011, amended in July 2012, and the Court has previously ruled upon motions to

19  dismiss the original complaint *and* the FAC.  In his motion, Plaintiff asserts he has obtained new

20  information not previously available to him.   He contends the proposed TAC contains

21  "amendments about Aurora, the Allonge and Lehman Brothers (¶¶ 12, 16, 17) [that] are the result

22  of information produced by Citimortgage in response to a Qualified Written Request and could not

23  have been alleged sooner."  (Doc. 98, p. 8.)  Plaintiff asserts the new allegations show that Citi has

24  no interest in the Note, as its claimed interest came from MERS, who never had a "substantive

25  financial interest," and neither of those parties was qualified to do business at crucial times.

26  Further, Plaintiff contends the allegations of the proposed TAC establish that "the Note went to

27  Aurora, and also went to Lehman Brothers and thence to (blank)."  (Doc. 98, p. 8.)

28

Plaintiff has not established this information was newly received through the discovery process or that it was only available to him recently.  Plaintiff contends the information about the allonge, Aurora, and Lehman Brothers was produced by Citi in response to a Qualified Written Request, but the proposed amended complaint indicates Citi mailed Plaintiff a copy of the allonge on August 31, 2011.  (Doc. 99, Proposed TAC, ¶ 176.)  The "additional information" about Lehman Brothers appears to originate from the allonge which reflects a payment of $211,850 from First Pacific (on behalf of borrowers Glenn and Karen Bever) to Lehman Brothers pursuant to the Note on the Property.  The allonge to the original 2003 Note may be newly submitted, but there is nothing establishing that it is newly discovered.  Additionally, the allonge does not plausibly show Plaintiff's Note was transferred to Lehman Brothers.

The "information" about Aurora appears to be a copy of the Deed of Trust recorded on June 20, 2003, that has the word "Aurora" handwritten near the top of the document along with what appears to be an account number.  (Doc. 99, Proposed TAC, p. 83, Exhibit H.)  The copy of the 2003 Deed of Trust ostensibly was provided to Plaintiff in 2011.  However, even to the extent this particular copy of the 2003 Deed of Trust is newly obtained, the handwritten word "Aurora" and the account number at the top of the document do not establish Aurora's involvement as there is no information regarding who wrote these items on this copy of the Deed of Trust, when they were written, or for what purpose.

Plaintiffs' summary of the rest of the proposed amended facts relates to the corporate status of First Pacific, MERS, and Citi in California; MERS' assignment to Citi and its status as a "nominee"; MERS' website showing Fannie Mae as an investor and Citi listed as a servicer only; that Brenda Enriquez is an employee of Citi and not MERS; that Citi transferred any interest in the Deed of Trust prior to this lawsuit waiving any right to foreclose; Citi has never held the Note; Ben Torres was not authorized to sign the Notice of Default; James Davis was not authorized to sign the Notice of Trustee Sale; the assignment from Citi to Fannie Mae is invalid; the Note is still held by Lehman Brothers; and Jason Jenkins was not authorized to sign the Substitution of Trustee.  (Doc. 98, Motion to Amend, ¶¶ 1-18.)

1   Citi's opposition to Plaintiff's Motion to Amend correctly notes that the FAC already

2   included allegations regarding MERS' corporate status in California (*see* FAC, ¶ 10), which was

3   considered and rejected by the district court in its October 2013 order.   Plaintiff's allegations

4   regarding MERS as a nominee of First Pacific, MERS signing as nominee the assignment to Citi,

5   and MERS' lack of authority to sign the assignment (*see* Doc. 98, Motion to Amend ¶¶ 9-10), were

6   all previously and unsuccessfully alleged in the FAC at paragraphs 27 and 33.   Plaintiff's

7   allegations regarding Citi's interest in the loan were raised in the FAC at paragraphs 50-10 through

8   50-16 and 66; Plaintiff's allegations regarding Brenda Enriquez were previously pled in the FAC

9   at paragraphs 50-4 through 50-8; Plaintiff's allegations regarding James Davis and Jason Jenkins

10  were previously pled in the FAC at paragraphs 53-2, 53-3, and 57; Plaintiff's challenges to the

11  ability of MERS to assign the Note because the interest had been sold to a securitized trust was

12  raised in the FAC at paragraph 30-37; and Plaintiff's challenge to the Substitution of Trustee was

13  previously pled in the FAC at paragraphs 50-1 through 58.

14   In sum, the allegations Plaintiff seeks to add to the complaint are not comprised of newly

15  discovered facts, but facts that have already been known and pled by Plaintiff in the FAC or facts

16  that Plaintiff has known, or should have known since the inception of the lawsuit or at the time he

17  amended his complaint in 2012, but failed to raise.   Thus, the basis for amendment does not

18  establish Plaintiff's diligence in seeking to amend the complaint to include these allegations.   *See*

19  *JP Morgan Chase Bank, N.A. v. KB Home*, 2010 WL 3862086, at *5 (D. Nev. Sept. 26, 2010) (no

20  good cause to amend where basis for amendment was known long before amendment sought and

21  when prior motion to amend was considered).   Rather, Plaintiff's request to amend his complaint

22  appears to be an attempt at an end-run around the district court's dismissal of all but one of

23  Plaintiff's claims.

24   As to allegations about the allonge, Lehman Brothers, and Aurora, Plaintiff has not

25  established this information was not available to him since the inception of the lawsuit.   Even to

26  the extent this information is newly discovered, Plaintiff has not shown how the allonge and/or the

27  handwriting on the copy of the 2003 Deed of Trust establish anything with regard to the validity or

28  invalidity of any documents.   The recorded assignment of the Deed of Trust in 2011 from Citi to

1   Fannie Mae may be newly submitted, but Plaintiff has not refuted the fact that this document has

2   been publicly available since 2011.  For these reasons, the Court concludes Plaintiff has not been

3   diligent in seeking amendment and has failed to establish good cause to amend the scheduling

4   order to allege eleven new claims and add additional defendants to the suit.

5   **C.     Amendment Is Not Appropriate Under Federal Rule of Civil Procedure 15(a)**

6         Beyond that good cause to amend the scheduling order is not shown under Rule 16,

7   amendment is likewise not appropriate under Rule 15(a).

8         Federal Rule of Civil Procedure 15 provides that a party may amend its pleading only by

9   leave of court or by written consent of the adverse party and that leave shall be freely given when

10  justice so requires.  Fed. R. Civ. P. 15(a)(1)-(2).  The Ninth Circuit has instructed that the policy

11  favoring amendments "is to be applied with extreme liberality."  *Morongo Band of Mission*

12  *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Nevertheless, leave to amend is not

13  unlimited.  The factors commonly considered to determine the propriety of a motion for leave to

14  amend include the following: (1) bad faith, (2) undue delay, (3) repeated failure to cure

15  deficiencies by amendments previously allowed; (4) prejudice to the opposing party, and

16  (5) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

17        The Ninth Circuit has held that prejudice to the opposing party carries the greatest weight.

18  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Absent prejudice, or

19  a strong showing of any of the remaining *Foman* factors, a presumption in favor of granting leave

20  to amend exists under Rule 15(a).  *Id.*  Further, undue delay alone is insufficient to justify denial

21  of a motion to amend.  *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).  Finally, "liberality in

22  granting leave to amend is not dependent on whether the amendment will add causes of action or

23  parties."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). *Contra Union Pac.*

24  *R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("Amendments seeking to add

25  claims are to be granted more freely than amendments adding parties.").

26        While the scheduling order set a deadline of February 7, 2014, to seek amendment of the

27  pleadings, this deadline was not an invitation to attempt to amend the complaint to re-state claims

28  that have already been dismissed with prejudice.  Plaintiff was provided an opportunity to amend

14

1  his complaint in 2012, and the district court has ruled upon motions to dismiss both the original

2  complaint and the FAC.  For this reason, the Court takes a dim view of Plaintiff's attempt to

3  amend the complaint to reassert claims that the district court has already dismissed with prejudice.

4  With respect to allegations or claims not previously alleged, Plaintiff has unduly delayed in

5  attempting to include these in his complaint, amendment would be prejudicial to Citi and the

6  defendants Plaintiff seeks to add, and the claims are not cognizable and are futile.

7  **1.      Attempt to Restate Quiet Title Claim Previously Dismissed With Prejudice**

8  Notwithstanding that Plaintiff's quiet title cause of action has twice been dismissed as

9  insufficiently pled, and most recently dismissed with prejudice, Plaintiff seeks to reassert a quiet-

10  title claim against First Pacific, Cal-Western, Citi, Fannie Mae, and Lehman Brothers.

11  Although Plaintiff's theory appears to have shifted somewhat, the gravamen of the

12  allegations of his proposed amended complaint is that Citi has no interest in the underlying loan

13  and therefore cannot seek to sell the property under the Deed of Trust – a theory of recovery

14  already considered by the Court.  Moreover, to the extent Plaintiff's proposed amended quiet title

15  action rests on a new theory, he has not established the underlying facts were not known to him or

16  could not have been known to him when he filed the action.  Because this claim was previously

17  dismissed with prejudice, Plaintiff may not attempt to amend the complaint to reassert the claim

18  based on facts already known, or that should have been known to him at the inception of this suit

19  or at the time the complaint was amended in 2012.

20  **2.      Undue Delay Weighs Against Amendment**

21  As with the facts underlying Plaintiff's amended quiet title claim, the remainder of the

22  claims Plaintiff seeks to add rely on facts that were known or should have been known to Plaintiff

23  over two years ago when he filed this lawsuit.

24  "A party unduly delays seeking amendment by failing to seek amendment reasonably

25  promptly after it 'knew or should have known' that amendment was called for."  *Johnson v.*

26  *Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011) (quoting *AmerisourceBergen*

27  *Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *see also Jackson v. Bank of Hawaii*,

28  902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the

moving party knew or *should have known* the facts and theories raised by the amendment in the original pleading.").   A party's undue delay and failure to explain the reasons for delay weigh against leave to amend under Rule 15.  *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996); *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is not a dispositive factor in the amendment analysis, it is relevant . . . especially when no reason is given for the delay.").  "While delay alone does not justify denial of leave to amend, 'late amendments to assert new theories are not reviewed favorably when the facts and theory have been known to the party seeking amendment since the inception of the cause of action.'"  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1159 (N.D. Cal. 2010).

Although Plaintiff's proposed amended complaint contains new allegations, he fails to establish that the facts alleged could not have been known to him at an earlier time.  Rather, the allegations are simply a re-tooling of theories relating to facts known or that should have been known when Plaintiff filed suit in September 2011 or when he filed a First Amended Complaint in July 2012.  (*See* Doc. 42.)[4]  As discussed above, Plaintiff's attempt to state facts or theories that were known or should have been known demonstrates undue delay.  *See id.*  Plaintiff's delay in alleging these facts, theories, and claims weighs against permitting amendment.

**3.    Prejudice to Citi and Defendants Plaintiff Seeks to Add**

The scope of the proposed amendment to Plaintiff's complaint is highly prejudicial to Citi for several reasons.  First, Citi has already defended against the bulk of these claims in two separate motions to dismiss.  All but one of Plaintiff's claims were dismissed without leave to amend.  The claims Plaintiff seeks to add are largely a restatement of claims that have previously been dismissed, particularly as they relate to the quiet-title action.

Second, amendment of the pleadings in the manner sought would significantly expand the scope of the litigation and the parties involved, requiring additional discovery and an extension of all the remaining deadlines.  *See Jackson,* 902 F.2d at 1388 (prejudice may arise when new

---

[4] Even to the extent the handwriting on the copy of the 2003 Deed of Trust is newly discovered (although it is not clear how or when Plaintiff obtained this document), Plaintiff has not established how it can adequately support a new claim or theory.

1  theories require a party to re-litigate issues or significantly alter the circumstances of the

2  litigation).  Citi would suffer prejudice from delay of the litigation.

3      If the schedule was not modified, the new parties would be prejudiced because discovery

4  closes on June 6, 2014, the dispositive motion deadline is set for July 14, 2014, and the trial date is

5  set for November 18, 2014.  Newly added parties would have little to no time to respond to the

6  complaint, conduct discovery, and file dispositive motions.  *DCD Programs, Ltd. v. Leighton*, 833

7  F.2d 183, 187 (9th Cir. 1987) ("Amending a complaint to add a party poses an especially acute

8  threat of prejudice to the entering party.").  Notably, the claims against MERS were all dismissed

9  with prejudice and are no longer part of the action.  Permitting amendment would require MERS

10  to once again defend against claims and allegations it has already litigated.  In sum, prejudice to

11  the defendants weighs strongly against the proposed amendment.

12      **4.      Legal Insufficiency of the Proposed Claims**

13      Futility is a recognized basis for denying a proposed amendment to the pleadings.  *Kiser v.*

14  *General Elec. Corp*., 831 F.2d 423, 428 (3d Cir. 1987).  The test for futility "is identical to the one

15  used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)."  *Miller v.*

16  *Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).   "[T]o survive a motion to dismiss, a

17  complaint must contain sufficient factual matter to state a facially plausible claim to relief."

18  *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft*

19  *v. Iqbal*, 556 U.S. 662, 677 (2009)).

20      As discussed below, the claims Plaintiff seeks to add are legally insufficient, and thus it

21  would be futile to amend the complaint to include them.

22      **a.      Quiet Title Claim Against Other Defendants**

23      Notwithstanding the dismissal of this claim with prejudice as to Citi, MERS, and Cal-

24  Western, the amended version of the claim is legally insufficient for essentially the same reasons

25  the claim was previously dismissed.  Plaintiff's theory of recovery rests, in large part, on the notion

26  that MERS had no authority to assign the Deed of Trust and/or that MERS' transfer to Citi was not

27  effective.  Both these theories of invalidity of the transfer of the Deed of Trust to Citi have been

28  held to be insufficient by the district court.  (Doc. 75, 5:17-6:24.)

1   Plaintiff asserts in his reply brief that, although the Court found that MERS had a

2   beneficial interest to assign, the cases the district court cited are distinguishable from this case.

3   (Doc. 102, p. 3-5.)  He contends that the Deed of Trust does not identify MERS as a beneficiary

4   and thus MERS had no beneficial interest to assign to Citi.  (Doc. 102, p. 4.)   In this regard,

5   Plaintiff's attempt to amend evidences only his disagreement with the district court's dismissal of

6   his claim, which is insufficient.

7   Plaintiff also appears to predicate his theory of recovery on the fact that none of the

8   assignments of the Deed of Trust were valid because First Pacific, MERS, and Citi all executed

9   assignments at a time when their corporate status in California was "dissolved," "suspended," or

10   "surrendered."  First, the Court has already considered Plaintiff's allegation as to the corporate

11   status of MERS.  (*See* FAC, ¶ 10.)  Second, as discussed below, the facts alleged with regard to

12   these companies' corporate status in California are conclusory.  Finally, the documents Plaintiff

13   attaches to his proposed amended complaint do not plausibly show that any of these corporations'

14   corporate status in California was dissolved, suspended, or surrendered at the time of assignment

15   or execution of relevant documents in this case.  Plaintiff's amended complaint fails to allege facts

16   sufficient to state a cognizable claim for quiet title against any new defendant Plaintiff seeks to

17   add.[5]

18       **b.      15 U.S.C. § 1641(f)**

19           **(i)      Allegations of Plaintiff's Original Complaint**

20   In the original complaint, Plaintiff alleged that on August 12, 2011, he mailed a "Qualified

21   Written Request" to Citi seeking the name, address, and telephone number of the owner or

22   assignee of the loan.  (Doc. 1, ¶ 88.)  Plaintiff attached a copy of his August 12, 2011, letter to his

23   complaint.  Plaintiff claimed Citi's failure to respond was a violation of 12 U.S.C. § 2605.  (Doc.

24   1, ¶¶ 87-90.)

25

26

---

27   [5] Plaintiff's attempt to re-plead this claim with respect to Citi and Cal-Western (Plaintiff does not name MERS under his proposed amended quiet title claim, *see* Doc. 99, p. 29) is inappropriate as this claim has already been dismissed

28   with prejudice as to those entities. (Doc. 75, 16:4-5 (quite title action dismissed in its entirety without leave to amend).)

**(ii)     Court's Order of June 28, 2012**

On June 28, 2012, in granting Citi's motion to dismiss as to the claim pursuant to Section 2605, the Court determined Plaintiff's August 12, 2011, request did not provide a basis for suit under that section because, at the time the letter was sent, the effective date for the regulations implementing Section 2605 had not yet become effective.  Moreover, even had Section 2605(k) been in effect at the time of Plaintiff's August 12, 2011, letter, the Court found Plaintiff had failed to plead actual damages under RESPA, which is a necessary element of a claim pursuant to this section.  While Plaintiff alleged "damages to be determined at trial," the Court concluded this was too conclusory to adequately allege damages.  Thus, the Court dismissed this claim with leave to amend.  (Doc. 39, 7:10-13.).

**(iii)     Plaintiff's FAC**

On July 23, 2012, Plaintiff filed an amended complaint again setting forth a claim pursuant to Section 2605 predicated upon his August 12, 2011, letter to Citi.  (Doc. 42, ¶¶ 87-90.)  Plaintiff alleged that, as a result of Citi's failure to appropriately respond to his August 12, 2011, letter, he suffered "emotional distress, loss of reputation, and other actual damages to be determined at trial."  (Doc. 42, ¶ 90.)

**(iv)     The Court's Order of October 2, 2013**

Citi filed a motion to dismiss the FAC, and with respect to Plaintiff's claim pursuant to Section 2605, the Court determined the FAC did not adequately address the previous dismissal. Specifically, the allegations in the FAC with regard to Section 2605 "again continue to appear to rely on §2605(k)(1)(D), even though the Court explained that that section has no application to this case."  (Doc. 75, 9:19-21.)  Further, the Court noted that the August 12, 2011, letter did not constitute a "qualified written request."  (Doc. 75, 10:5-7.)  Finally, as it pertained to damages, the Court determined Plaintiff's allegations were conclusory and did not plausibly show that Citi's failure to respond to his letter caused him any damages.  The Court concluded that because Plaintiff had been given a chance to amend, and because Plaintiff's opposition failed to address Citi's arguments, further leave to amend was not warranted.

**(v)      Plaintiff's Proposed Claim under 15 U.S.C. § 1641 (TILA)**

Plaintiff now seeks to amend his complaint to add a claim against all Defendants under TILA pursuant to 15 U.S.C. § 1641(f)(2) based on the August 12, 2011, letter.[6]

Pursuant to TILA, when requested, a loan servicer must identify the "owner of the obligation or the master servicer of the obligation."  15 U.S.C. § 1641(f)(2).  Assuming Citi is a "loan servicer" pursuant to Section 1641, like Plaintiff's RESPA claim, to properly assert a TILA claim, a plaintiff must allege damages resulting from any failure to provide such information.  *See Che v. Aurora Loan Servs., LLC*, No. 11-1458, 2012 WL 899629, at *3 (C.D. Cal. Mar. 15, 2012).

Here, Plaintiff fails to allege any actual damages.  In the context of Plaintiff's RESPA claim based on the same facts, the Court has already twice determined Plaintiff failed to allege any actual damage resulting from Citi's failure to respond to the August 12, 2011, letter.  Plaintiff's claim under Section 1641 is not only brought after significant and undue delay, it is also not cognizable due to a lack of allegations regarding damages.  Thus, amendment of Plaintiff's complaint to state a claim under TILA is futile as the claim is legally insufficient.  *Foman*, 371 U.S. at 182 (repeated failure to cure deficiencies by previous amendment is a basis to deny motion to amend).

**c.      Plaintiff's Proposed Claim under 15 U.S.C. § 1692 (FDCPA)**

Plaintiff's proposed TAC attempts to allege a cause of action under the FDCPA against Citi.  (Doc. 99, Proposed TAC, ¶¶ 221-24.)

Plaintiff's original complaint included a claim under Section 1692 against Cal-Western.  (Doc. 1, ¶¶ 73-86.)  Plaintiff alleged that under the FDCPA, Cal-Western failed, in a "loan payment confirmation" letter dated June 13, 2011, to state the name of the creditor to whom the debt was owed and Plaintiff's right to dispute the debt within 30 days, in violation of Section 1692g(a)(2).  Plaintiff also alleged that Cal-Western failed to verify the debt as requested by Plaintiff and failed to cease collection after the request in contravention of Section 1692g(b).  Plaintiff also alleged that Cal-Western violated Sections 1692e and 1692f because it did not

---

[6] While the claim purports to name all the defendants, Plaintiff only alleges Citi's purported failure to provide information under Section 1641.

20

1    actually possess the promissory note for the Deed of Trust and therefore deceptively and unfairly

2    sought collection of the debt.

3         On June 28, 2012, the district court dismissed this claim because Plaintiff had failed to

4    allege that Cal-Western acquired the debt when it was in default *and* took on the debt solely for

5    the purpose of facilitating collection of the debt.  Plaintiff was granted leave to amend this claim.

6         On July 23, 2012, Plaintiff reasserted this claim against Cal-Western in the FAC.  Cal-

7    Western filed a motion to dismiss and initiated bankruptcy proceedings; the motion to dismiss has

8    been stayed since October 2013 pursuant to the automatic bankruptcy stay.

9         In his "Third Amended Complaint," Plaintiff again asserts a FDCPA claim against Cal-

10   Western, but additionally seeks to add a claim under the FDCPA against Citi.  Plaintiff alleges that

11   Citi falsely claimed to be owed money on account of the disputed loan, but that Citi is merely a

12   servicer of the loan and, as such, its activities constitute unfair and unconscionable means to

13   collect or attempt to collect the alleged mortgage debt in violation of Section 1692f.

14        The FDCPA seeks to curtail abusive collection practices by debt collectors.  15 U.S.C.

15   §1692.  Courts have construed mortgage servicing companies and assignees of debt as creditors

16   within the meaning of the FDCPA.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, *modified on other*

17   *grounds*, 761 F.2d 237 (5th Cir. 1985).   Trustees of deeds of trust are likewise treated like

18   creditors under the FDCPA.  *Crane v. Bank of N.Y. Mellon*, 2012 (E.D. May 16, 2012).

19        Under Section 1692a(4), creditors are subject to the FDCPA to the extent they "receive[]

20   an assignment or transfer of a debt in default solely for the purpose of facilitating collection of

21   such debt for another."  The Ninth Circuit has construed "in default" to reflect the meanings found

22   in relevant contractual agreements and state law.  *De Dios v. Int'l Realty & RC Invs.*, 641 F.3d

23   1071, 1074-75 (9th Cir. 2011).  Even if a creditor obtains a debt that is already in default, for the

24   FDCPA to apply, a plaintiff must also allege that the debt was acquired solely for facilitating

25   collection.  *Schlegel v. Wells Fargo Bank*, 799 F. Supp. 2d 1100, 1104 (N.D. Cal. 2011).

26        As discussed in the Court's June 28, 2012, order on Cal-Western's motion to dismiss

27   Plaintiff's claim under the FDCPA (*see* Doc. 39, 4:19-5:24), Plaintiff fails to allege that the debt

28   was acquired by Citi when it was already in default and solely to facilitate collection.  As with

1  Plaintiff's original complaint, the allegations against Citi in the proposed TAC fail to state a

2  legally sufficient claim under Section 1692 against Citi.

3       As it pertains to the Section 1692 claim against Cal-Western, Cal-Western's motion to

4  dismiss this claim is stayed and remains pending before the Court until Cal-Western's bankruptcy

5  proceeding has concluded.[7]

6

7      **d.    Plaintiff's Proposed Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

8       Plaintiff alleges a claim for breach of the implied covenant against the "Foreclosing

9  Defendants."   (Doc. 99, Proposed TAC ¶¶ 254-59.)   Plaintiff alleges that the Foreclosing

10  Defendants enjoyed substantial discretionary power affecting Plaintiff's rights during the events

11  alleged, and the Foreclosing Defendants engaged in "such conduct to drive Plaintiff into

12  foreclosure so that they could acquire the Subject property with its large equity at a bargain

13  basement price." (Doc. 99, Proposed TAC, ¶ 257.) Plaintiff alleges that MERS willfully breached

14  the covenant when it "allowed [its] alleged agent to execute the Assignment of the Deed of Trust

15  in order to appoint a new Trustee to begin foreclosure of the Subject Property."   (Doc. 99,

16  Proposed TAC, ¶ 258.)

17       The allegations with respect to MERS' appointment of a new trustee have already been

18  considered by the Court.  Plaintiff's proposed claim for breach of the implied covenant appears to

19  arise from the same factual predicate that has already been rejected – namely, that the signatories

20  to these documents were not who they claimed to be, and MERS had no authority to make any

21  assignments.  With respect to Plaintiff's theory regarding MERS' execution of the assignment of

22  the Deed of Trust, the district court held as follows:

23        It appears that Bever is attempting to utilize a quiet title cause of action to prevent

24        foreclosure on the deed of trust.  Bever's specific bases depend on a legally invalid
      view of MERS's authority, and allegations that the individuals who signed the

25        assignment of deed of trust, substitution of trustee, and the notice of default and
      election to sell, are not who they claim to be.  However, the allegations concerning

26        the signatories are conclusory and implausible.

27

28  _____
  [7] Plaintiff has not proposed any additional amendments to this claim against Cal-Western in any event.

(Doc. 75, 8:14-19.)  The theory underlying Plaintiff's breach of the implied covenant is essentially the same as that already considered by the district court and found to be insufficient to state a claim.  Therefore, the proposed claim is not cognizable, and it is futile to amend the complaint to include it.

**e.      Plaintiff's Proposed Claims for Cancellation of a Voidable Contract**

Plaintiff alleges three causes of action for cancellation of a voidable contract under California Revenue and Tax Code §§ 23304.1, 23305A and violation of California Corporation Code §§ 191(C)(7) against First Pacific, MERS, and Citi.  (Doc. 99, Proposed TAC, ¶¶ 230-43, 247-53.)  Plaintiff asserts that each entity failed to comply with California Franchise tax laws, and thus the deed of trust is voidable by Plaintiff pursuant to California Revenue and Tax Code §§ 23304.1(a) and 23304.1(b) and 23305a.[8]   Specifically, Plaintiff asserts that First Pacific was conducting business and prepared the First Assignment in this case in California at a time when it was "dissolved."  Likewise, Plaintiff asserts that MERS was operating in California at a time when its status was "suspended."  (Doc. 99, Proposed TAC, ¶ 237.)  Therefore, MERS could not be a "nominee" for the defunct First Pacific.  (Doc. 99, Proposed TAC, ¶ 238.)  Finally, Plaintiff asserts that Citi was operating in the State of California at a time when it was "suspended."

Plaintiff attaches to his proposed TAC printouts from the California Secretary of State website regarding the status of each of these entities.  The printout regarding Citi indicates Citi's name, number, the "date filed," its "status," jurisdiction, address, agent for service of process, and the agent's address.  (Doc. 99, Proposed TAC, Exhibit B.)  Plaintiff asserts this establishes Citi's status is "surrendered" and that Citi was surrendered on the "date filed," which was October 25, 1979.  However, the definitions for the fields provided on the Secretary of State's website indicates the "date filed" field is the "date of formation of a California (domestic business entity, the date of qualification or registration of a foreign (out-of-state or out-of-country) business entity doing

---

[8] California Revenue and Tax Code §§ 23304.1(a) provides that every contract made in California by a taxpayer when that taxpayer's corporate powers, rights, and privileges are suspended or forfeited shall be voidable at the instance of any party to the contract other than the taxpayer.  Section 23304.1(b) provides that if a foreign taxpayer is not qualified to do business in the state, any contract made in the state by that taxpayer during the applicable period is voidable at the instance of any party to the contract other than the taxpayer.  Section 23304.5 provides that a party who has the right to declare a contract to be voidable pursuant to Section 23304.1 may exercise that right only in a lawsuit brought by either party with respect to the contract in a court of competent jurisdiction.

1   business in California, the date of registration of a domestic or foreign limited partnership, or the

2   date a business entity converted to a California corporation, California limited liability company

3   or California limited partnership." *See* http://www.sos.ca.gov/business/be/cbs-field-status-

4   definitions.htm. The "date filed" field does not indicate that Citi's status was "surrendered" in

5   1979, but that Citi was registered in California on that date. This documentation does not

6   establish that Citi was surrendered at the time it took action with respect to Plaintiff's Deed of

7   Trust. Similarly, Plaintiff's allegation that the "date filed" field with respect to MERS and First

8   Pacific also shows they were dissolved or surrendered at the time they took actions with respect to

9   Plaintiff's Deed of Trust lacks merit. As with Citi, these documents show only the date these

10  companies were registered or formed in California, not the date their current status was updated or

11  changed. (*See* Doc. 99, Proposed TAC, Exhibits A, E.)

12      In sum, these allegations fail to establish these entities were doing business in California

13  when they were suspended, dissolved, or surrendered and that Plaintiff is, therefore, entitled to the

14  cancellation of any written instrument.

15                  **f.      Plaintiff's Proposed Claim to Void or Cancel the First Assignment**

16      Plaintiff's seventh proposed cause of action seeks to void or cancel the first assignment

17  from MERS' to Citi in May 2011. California law authorizes courts to cancel void or voidable

18  written instruments where their existence creates a "reasonable apprehension [of] serious injury to

19  a person against whom [the written instrument] is void or voidable." Cal. Civ. Code § 3412.

20      Plaintiff alleges MERS did not have standing or the legal authority to assign the Deed of

21  Trust, and thus the assignment of the Deed of Trust was void at all times. (Doc. 99, Proposed

22  TAC, ¶ 245.) Plaintiff alleges that MERS' permission to do business in California has been

23  suspended since 2002, and MERS acted solely as a nominee for First Pacific, and not as a

24  beneficiary, and therefore had no interest to assign to Citi. Moreover, Plaintiff contends that First

25  Pacific was not registered to do business in California on the date the first assignment was signed,

26  thus its nominee, MERS, could not have lawfully signed or authorized the First Assignment.

27  (Doc. 99, Proposed TAC ¶ 2.) Plaintiff also again contends that Brenda Enriquez was not

28  authorized to sign the first assignment of the Deed of Trust to Citi.

1    The allegations underpinning this claim were considered and rejected by the district court

2  in ruling on Citi and MERS' motion to dismiss in October 2013.  (Doc. 75, 5:17-9:4.)   The

3  allegations do not plausibly set forth a claim to void or cancel the first assignment of Plaintiff's

4  Deed of Trust to Citi.

5
        **g.    Plaintiff's Proposed Claim Pursuant to California Business &**
6             **Professions Code § 17200**

7    Plaintiff's proposed claim under Section 17200 alleges the "Foreclosing Defendants"

8  engaged in deceptive business practices with respect to mortgage loan servicing, assignment of

9  notes and deeds of trust, foreclosure of residential properties and related matters by executing and

10  recording false and misleading documents and acting as beneficiaries and trustees without the

11  requisite legal authority.  (Doc. 99, Proposed TAC, ¶ 263.)

12    Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and

13  unfair, deceptive, untrue or misleading advertising."  It covers a "wide range of conduct" and

14  embraces "anything that can properly be called a business practice and that at the same time is

15  forbidden by law."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143-33

16  (2003).  Because Section 17200 is written in the disjunctive, it establishes three types of unfair

17  competition.  *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 593 (2009).  Therefore, a

18  practice may be prohibited as unfair or deceptive even if it is not unlawful and vice versa.

19  *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996).

20    To state a claim for fraud under California's unfair competition law, a plaintiff must show

21  that reasonable members of the public are likely to be deceived.  *Bardin v. DaimlerChrysler*

22  *Corp.*, 136 Cal. App. 4th 1255, 1261 (2006).  Plaintiff's proposed amended complaint alleges that

23  "Defendants' acts and practices are likely to deceive."  (Doc. 99, Proposed TAC, ¶ 262.)  This

24  statement, however, merely concludes that deception is likely, but fails to plead any specific facts

25  showing the basis for that conclusion.  *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612,

26  619 (1993) ("A plaintiff must state with reasonable particularity the facts supporting the statutory

27  elements of the violation.").  The averments of a non-fraud claim which sound in fraud are subject

28

to Federal Rule of Civil Procedure 9(b).[9]  Thus, allegations of fraudulent conduct under Section 17200 must satisfy this heightened pleading requirement.  To meet Rule 9(b)'s heightened pleading standard, a plaintiff must allege the who, what, when, where, and how of the fraudulent conduct.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-24 (9th Cir. 2009).  Here, there is only one conclusory allegation that Defendants' practices are likely to deceive, which is insufficient to meet the heightened pleading requirements.  (*See* Doc. 99, Proposed TAC, ¶ 262.) This claim is not cognizable.

### h.        Plaintiff's Proposed Claim for Slander of Title

Plaintiff alleges that none of the Foreclosing Defendants was ever a trustee, beneficiary, or assignee of any beneficiary of a Deed of Trust recorded against the Property.  Accordingly, they all wrongfully caused the recording of the Substitution, Notice of Default, and Notice of Trustee's Sale.  (Doc. 99, Proposed TAC, ¶¶ 268-69.)  Further, Plaintiff asserts that Citi has wrongfully published information that it is the current beneficiary under the Deed of Trust which Plaintiff contends is untrue; Citi has thus disparaged Plaintiff's interest in the Property.

Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof "some special pecuniary loss or damage."  *Fearon v. Fodera*, 169 Cal. 370, 379-80 (1915).  To state a claim for slander of title, a plaintiff must allege (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss.  *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 84 (1997).  The gravamen of the cause of action is to protect the salability of property from injury.  *Howard v. Schaniel*, 113 Cal. App. 3d 256, 264 (1980).  This is ordinarily established through the loss of a particular sale, impaired marketability, or depreciation in value. *Hill v. Allan*, 259 Cal. App. 2d 470, 489 (1968).  Pecuniary loss is an essential element of the cause of action.  *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1057 (2009).

---

[9] Plaintiff has already been informed of the heightened pleading requirements for fraud allegations pursuant to Federal Rule of Civil Procedure 9(b). (*See* Doc. 75, 12:9-13:18 (dismissing Plaintiff's fraud and injurious falsehood claim against MERS as insufficiently pled pursuant to Rule 9(b).)

This proposed cause of action is similar to Plaintiff's twice-dismissed claim against MERS for fraud or injurious falsehood.  In Plaintiff's initial complaint and in his amended complaint, he alleged MERS' recordation of the assignment of the Deed of Trust to Citi was a false statement because MERS lacked the authority to execute a valid assignment, and thus MERS was liable for fraud or injurious falsehood.

It is futile to amend the complaint to state this cause of action.  First, as it pertains to MERS, the district court has already considered Plaintiff's allegations and rejected them as insufficient to state a cause of action for fraud or injurious falsehood, which is substantially similar to the slander of title claim Plaintiff currently proposes.  Second, Plaintiff fails to sufficiently plead pecuniary damages to support his claim.  Although Plaintiff asserts the conduct of the Foreclosing Defendants caused him "to suffer general and special damages in an amount to be proven at trial" (Doc. 99, Proposed TAC, ¶ 273), this assertion is conclusory.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations).  For these reasons, assertion of this claim is futile.

### i.    Plaintiff's Proposed Claim for Civil Conspiracy Claim pursuant to 18 U.S.C. § 1965

Plaintiff alleges that the "Foreclosing Defendants" violated Section 18 U.S.C. § 1965, part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), by conspiring to commit fraudulent acts in attempting to foreclose on Plaintiff's property.  (Doc. 98, ¶¶ 274-84.)  Section 1965 itself refers to venue and process related to types of RICO claims; substantive civil conspiracy claims are not stated under Section 1965.  It appears Plaintiff is attempting to state a civil conspiracy claim under 18 U.S.C. § 1962(c).

The civil RICO statute provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.* 473 U.S. 479, 496 (1985)).

The particularity requirements of Rule 9(b) apply to RICO claims.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).  Absent a statement of the date, time, and place of the alleged wrongful conduct, as well as identification of the particular defendants who participated in the wrongful conduct, the claim is not adequately pled.  Plaintiff's allegations are merely conclusions of law that do not meet the heightened pleading requirements of Rule 9. Because this claim is legally insufficient as proposed and would be subject to dismissal under Rule 12(b)(6), Plaintiff's request to amend his complaint to add a claim under 18 U.S.C. § 1965 would be futile.  *Miller*, 845 F.2d at 214 (citing Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)); *see also Baldin v. Wells Fargo Bank, N.A.*, No. 3:12-cv-00648-AC, 2013 WL 6388499, at * 7-9 (D.Or. Dec. 6, 2013) (denying leave to amend certain claims as futile where the claims would be subject to dismissal under Rule 12(b)(6)).

### 5.     Conclusion

The proposed amendments to the complaint are not tenable under Rule 15(a).  Plaintiff's proposed amended complaint is predicated on facts that were, or should have been, known to Plaintiff when his complaint was filed in 2011 or when he filed an amended complaint in 2012.[10] As a result, Plaintiff has unduly delayed setting forth his new claims.  To the extent that handwriting on a copy of the 2003 Deed of Trust is newly discovered, Plaintiff has failed to establish how this supports any theory of recovery, who wrote it, when it was written, or for what purpose it was written.

---

[10]    Plaintiff has not established what facts could only have been obtained in discovery from Citi since December 2013.

1    Additionally, the scope of amendment proposed is prejudicial to Citi and the new

2  defendants Plaintiff seeks to add because it would require significant modification to the existing

3  schedule.  The addition of newly added defendants would require an entirely new schedule, an

4  extensive continuance of the discovery deadlines, and would cause significant delay to the trial

5  date.  As Citi is the only defendant, and the case has been proceeding on one very narrow claim

6  for relief, the proposed amendment would be highly prejudicial to Citi – particularly as Citi has

7  already defended against the bulk of Plaintiff's "new" allegations in two separate motions to

8  dismiss.

9    Finally, the newly proposed claims are either insufficiently pled or involve theories that

10 have already been considered by the district court and dismissed without leave to amend.  As such,

11 the amendments Plaintiff seeks are futile.

12                         **V.    CONCLUSION AND ORDER**

13    For the reasons stated above, it is HEREBY ORDERED that Plaintiff's motion to amend

14 the complaint is DENIED.

15

16

17 IT IS SO ORDERED.

18    Dated:   **April 17, 2014**                        **/s/ Sheila K. Oberto**
                                            UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28