1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8
9

GLENN W. BEVER,

CASE NO. 1:11-CV-1584 AWI SKO

10

**Plaintiff**

11

v.

12

CAL-WESTERN RECONVEYANCE
CORP., et al.,

13

**Defendants**

14

**ORDER ON DEFENDANT CITI'S
MOTION FOR SUMMARY
JUDGMENT; ORDER DISSOLVING
PRELIMINARY INJUNCTION; ORDER
FOR FINAL JUDGMENT UNDER RULE
54(b); and ORDER FOR STATUS
REPORT FROM DEFENDANT CAL-
WESTERN**

15
16

(Doc. No. 138)

17
18

        This is a mortgage related case brought by Plaintiff Glenn Bever ("Bever") against *inter*

19

*alia* CitiMortgage, Inc. ("Citi").[1]  Following a series of Rule 12(b)(6) motions to dismiss, the only

20

claim left against Citi is for violation of Civil Code § 2923.5.  A preliminary injunction against

21

Citi that prohibits it or its agents from foreclosing upon Bever's property is currently in place.  <u>See</u>

22

Doc. No. 76.  Citi now moves for summary judgment.  For the reasons that follow, the motion will

23

be granted.  Further, the Court will dissolve the preliminary injunction, and issue final judgments

24

in favor of MERS and Citi pursuant to Federal Rule of Civil Procedure 54(b).

25
26

---

27

[1] Bever also brought suit against Mortgage Electronic Registration Services, Inc. ("MERS") and Cal-Western
Reconveyance Corp. ("Cal-Western").  All claims against MERS have been dismissed. <u>See</u> Doc. No. 75.  The only

28

remaining claim against Cal-Western is for violation of 15 U.S.C. § 1692, but the case against Cal-Western is
currently stayed pursuant to a mandatory bankruptcy stay.  <u>See</u> Doc. Nos. 71, 75.

I.     **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*Summary Judgment Framework*

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest

1    upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets

2    forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope

3    Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

4         The opposing party's evidence is to be believed, and all justifiable inferences that may be

5    drawn from the facts placed before the court must be drawn in favor of the opposing party.  See

6    Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899

7    (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive

8    inference, a "justifiable inference" must still be rational or reasonable.  See Narayan, 616 F.3d at

9    899.  "If conflicting inferences may be drawn from the facts, the case must go to the jury."  Holly

10   D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1175 (9th Cir. 2003).  Inferences are not drawn out of the

11   air, and it is the opposing party's obligation to produce a factual predicate from which the

12   inference may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal.

13   2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine

14   issue of material fact does not spring into being simply because a litigant claims that one exists or

15   promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d

16   15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir.

17   2002).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is

18   'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v.

19   CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce

20   evidence sufficient to create a genuine issue of material fact, the moving party is entitled to

21   summary judgment.  Nissan Fire, 210 F.3d at 1103.

22        *Factual Background*[2]

23        In 2003, Bever obtained a loan that was secured by a deed of trust.  See Doc. No. 141 at

24   Ex. A.  The deed of trust encumbers real property located in Clovis, California, which is Bever's

25   homestead ("the Property").  See id.; First Amended Complaint ("FAC") ¶¶ 45, 46.  It appears that

26   Bever eventually fell behind on the loan in 2009.  See DUMF 4.

27        On June 16, 2009, Citi spoke to Bever over the telephone in order to assess his financial

28

---

[2] "DUMF" refers to "Defendant's Undisputed Material Fact."

situation and to explore options to avoid foreclosure. See id. Bever explained that he was experiencing financial difficulties due to a business failure. DUMF 5. Citi advised Bever that he had the right to request a subsequent meeting, and provided Bever with a toll-free United States Department of Housing and Urban Development ("HUD") telephone number in order to find a housing counseling agency. DUMF 6.

On September 15, 2009, Citi again spoke to Bever over the telephone. DUMF 7. The purpose of the September 15 call, as well as the information conveyed between Citi and Bever, were the same as the June 16, 2009 call. See DUMF's 8, 9.

On June 4, 2010, Citi spoke to Bever, who advised that the reason for the delinquency was the result of being "overextended." DUMF 14.

Numerous calls were made by Citi to Plaintiff in late June, all of July, and two days in August 2010. See DUMF 16. No messages were left. See id. It is unclear whether Citi actually spoke to Bever in June or July 2010. See Bever Decl. ¶¶ 5-8.

On August 10, 2010, Citi spoke to Bever, who advised that a servicing/misapplication of payment was the reason for the delinquency. See Bever Dec. ¶ 9; DUMF 17.

In a call on October 8, 2010, Bever advised Citi that the reason for the delinquency was due to slow receivables. DUM F 18.

In a telephone call on November 9, 2010, Bever advised Citi that the reason for the delinquency was due to slow business. DUMF 19.

On February 11 and 15, 2011, Citi spoke with Bever over the telephone. See Bever Dec. ¶¶ 10-13.

On February 22, 2011, Citi sent Bever a letter. See DUMF 25; Alsiweadi Dec. Ex. C. The letter indicates that Bever's account was delinquent and that approximately $1,800 was owed. See Alsiweadi Dec. Ex. C. The letter states that if Bever had not made arrangements for payment, then he should contact Citi at a toll-free number to discuss the possibility of alternative arrangements. See id. It appears that Bever did not receive this letter. See Bever Dec. ¶ 14.

Citi e-mailed Bever 5 times in March 2011, 4 times in April 2011, and 2 times in May 2011. See DUMF 24.

On March 4, 2011, Citi sent Bever a letter.  See DUMF 25; Alsiweadi Dec. Ex. C.  The letter indicates that it was sent to Bever at the Property address.  See Alsiweadi Dec. Ex. C.  The letter indicates in part that:  (1) the account is in default; (2) approximately $3,300 is past due; (3) a credit bureau has been informed of the delinquency; (4) a phone payment option is available; (5) a toll-free number for HUD homeownership counseling is provided; (6) an exterior inspection of the house will be conducted and may continue to be conducted during delinquency; (6) a toll-free number for a Citi collections specialist is provided for Bever to call if he is unable to make a payment; and (7) the letter is an attempt to collect a debt.  See id.  Bever did not receive this letter.  See Supp. Bever Dec. ¶¶ 2 ,3.

On March 15, 2011, Citi sent Bever another letter.  See DUMF 25; Alsiweadi Dec. Ex. C.  The letter was sent to Bever at the Property address and stated that Citi was extremely concerned that the account had not been kept current, Bever could lose the Property through acceleration, Bever has options, Bever could call Citi at a toll free number, and foreclosure was possible.  See Alsiweadi Dec. Ex. C.  Bever did not receive this letter.  See Supp. Bev. Dec. ¶¶ 2, 3.

Between March 5, 2011, and April 1, 2011, Citi attempted to contact Bever by telephone 22 times, and each call was made at a different time and on different days.  See DUMF 26.  Each of the calls was met by an answering machine, and no messages were left.  See id.[3]

On April 4, 2011, Citi sent a letter to Bever via certified mail return receipt requested.  See DUMF 25; Alsiweadi Ex. B.  The letter indicates that it was sent to Bever at the Property address, and states that it is regarding "Foreclosure Avoidance Notice."  Alsiweadi Dec. Ex. C.  In pertinent part, the letter states:  (1) California law requires Citi to contact Bever in order to explore options to avoid foreclosure; (2) a letter was sent several weeks prior to make Bever aware of this requirement and that Citi would be calling Bever to discuss his financial situation and whether any alternatives to foreclosure were possible; (3) Citi made three or more attempts to call Bever without success; (4) California law requires the sending of the letter to complete a diligent effort to contact Bever to discuss alternatives to foreclosure; (5) Citi intends to continue the foreclosure

---

[3] Bever disputes DUMF 26 by declaring that he did not receive any messages from Citi from March 5 to April 1, 2011.  However, DUMF 26 states that no messages were left on the answering machine.  DUMF 26 is undisputed.

1    process; (6) Bever can contact Citi at a toll-free number (which was provided) in order to explore

2    available options to avoid foreclosure; (7) a toll-free HUD number for housing counseling

3    agencies was provided; and (8) further delay in contacting Citi to explore alternatives to

4    foreclosure could cause the amount owed to Citi to increase.  See id.  Bever did not receive this

5    letter.  See Supp. Bev. Dec. ¶¶ 2, 3.

6          On May 23, 2011, Citi spoke to Bever on the telephone.  See Bever Dec. ¶ 27; DUMF 27.

7    Bever advised that he did not have time to provide his income and expenses, but that he would

8    bring the account current by June 17, 2011.  See DUMF 28.[4]  The account was not brought current

9    on June 17, 2011.  DUMF 29.[5]

10         On June 3, 2011, Citi recorded a Notice of Default regarding Bever's Clovis property in

11   the Fresno County Recorder's office.  See DUMF 30.  The amount of default is identified as

12   $6,862.60.  See Doc. No. 141 at Ex. B.

13         A notice of trustee's sale was recorded on September 6, 2011, in the Fresno County

14   Recorder's office.  See id. at Ex. D.

15         On October 26, 2011, this Court granted Bever a Temporary Restraining Order that

16   restrained the trustee's sale.  See Doc. No. 16.  The Court later granted Bever a preliminary

17   injunction based on allegations regarding a violation of California Civil Code § 2923.5 by Citi.

18   See Doc. No. 76.

19         At all pertinent times, when accessing Citi's website, the public could find the following

20   information at www.citimortgage.com: (1) options that may be available to borrowers who are

21   unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to

22   borrowers advising them on steps to take to explore those options; (2) a list of financial documents

---

[4] Bever disputes DUMF 28 by citing Paragraphs 58-1, 58-2, and 58-3 in the verified FAC and stating that the account was never in default.  See Doc. No. 148 at ¶ 28.  Paragraphs 58-1, 58-2, and 58-3 describe Bever's attempt to pay off the loan on January 18, 2012 through an Electronic Funds Transfer ("EFT").  See Doc. No. 42 at ¶¶ 58-1, 58-2, 58-3. The EFT is described as an instrument that was sent via certified mail to Citi.  See id.  However, as the Court has previously held, Bever's EFT was illegitimate and not a credible attempt at tender.  See Bever v. Cal-Western Reconveyance, Inc., 2013 U.S. Dist. LEXIS 143939, *13-*15 (E.D. Cal. Oct. 2, 2013).  DUMF 28 is undisputed.

[5] Bever disputes DUMF 29 by referencing Paragraphs 58-1, 58-2, and 58-3 of the FAC and stating that the account was never in default.  See Doc. No. 148 at ¶ 29.  As just discussed, Paragraphs 58-1, 58-2, and 58-3 represents an illegitimate attempt to tender.  DUMF 29 is undisputed.

1   borrowers should collect and be prepared to present to the mortgage servicer when discussing

2   options for avoiding foreclosure; (3) a toll-free telephone number for borrowers who wish to

3   discuss options for avoiding foreclosure; and (4) the toll-free telephone number made available by

4   HUD to find a HUD-certified housing counseling agency.  DUMF 33.

5          *Defendant's Argument*

6          Citi argues that it complied with Civil Code § 2923.5 prior to filing the notice of default.

7   Section 2923.5 can be followed either by contacting the borrower and discussing options to avoid

8   foreclosure, informing the borrower of the right to request a subsequent meeting, and providing a

9   toll-free HUD number, or meeting § 2923.5(g)'s due diligence requirements.  Citi argues that it

10  met both methods of compliance.  First, Citi argues that it had telephone contact with Bever that

11  met these requirements § 2923.5(a)(2) from June 16, 2009 through February 15, 2011.  Second,

12  Citi argues that it met the due diligence requirements of § 2923.5(g) because it sent Bever a letter

13  on March 4, 2011, made more than 3 attempts to contact Bever by telephone on different dates and

14  at different times, and sent Bever a certified letter return receipt requested on April 4, 2011.  Both

15  letters provided a toll-free number for Bever to contact a live Citi representative, and at all

16  pertinent times Citi's website contained all statutorily required information.  Because the

17  requirements of § 2923.5 were met, summary judgment should be granted.

18         *Plaintiff's Argument*

19         Bever argues *inter alia* that Citi did not actually contact him to assess his financial

20  situation or discuss options to avoid foreclosure.  Bever explains that during the February 15, 2011

21  telephone call Citi did not ask why Bever could not make his payments and did not tell him about

22  deeds in lieu, workouts, short sales, or any such thing.  That is, Bever argues that he did not

23  receive telephone calls prior to June 3 about exploring options to avoid foreclosure.  Bever also

24  declares that he did not receive any letters from Citi in March 2011 or April 2011.

25         Bever also objects to the declaration of Elina Alsiweadi.  Bever argues that the declaration

26  does not demonstrate personal knowledge, is not a proper declaration under 28 U.S.C. § 1746, and

27  does not meet the requirements of California Evidence Code § 1271 or Federal Rule of Evidence

28  803(6).  Since Alsiweadi's declaration is inadmissible, Citi has not met its burden.

1     *Legal Standard*[6]

2        "Section 2923.5 concerns the crucial first step in the foreclosure process:  The recording of

3 a notice of default as required by section 2924."  Mabry v. Superior Court, 185 Cal.App.4th 208,

4 220 (2010).  Section 2923.5 precludes the recording of a notice of default "until 30 days after the

5 loan servicer has made initial contact with the borrower to assess the borrower's financial situation

6 and explore options for avoiding foreclosure, or has satisfied the due diligence requirements of the

7 statute."  Intengan v. BAC Home Loans Servicing LP, 214 Cal.App.4th 1047, 1056 (2013); see

8 also Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107 (E.D. Cal. 2011); Rossberg v. Bank

9 of America, N.A., 219 Cal.App.4th 1481, 1494 n.8 (2013); Skov v. U.S. Bank Nat'l Assn., 207

10 Cal.App.4th 690, 695 (2012).  Thus, "§ 2923.5 actually provides two ways for lenders to comply:

11 they can either contact the borrower in person or by phone, or they can satisfy [statutory] due

12 diligence requirements in attempting to make such contact."  Miller v. Bank of N.Y., 2013 U.S.

13 Dist. LEXIS 24764, *7 (N.D. Cal. Feb. 22, 2013); see Frias v. Wells Fargo Bank, 2013 U.S. Dist.

14 LEXIS 11287, *4-*5 (N.D. Cal. Jan. 28, 2013).

15        With respect to the first method of compliance, actual contact in person or by telephone,

16 the lender is required to both assess the borrower's financial condition and explore options for

17 avoiding foreclosure.  Cal. Civ. Code § 2923.5(a)(2); Skov, 207 Cal.App.4th at 701; Mabry, 185

18 Cal.App.4th at 221.  The borrower is also to be told that he has a right to request a subsequent

19 meeting, and is to be provided with the HUD toll-free telephone number for locating a certified

20 housing counseling agency.  See Cal. Civ. Code 2923.5(a)(2).  However, the "assess" and

21 "explore" aspects of § 2923.5 are to be construed "narrowly."  Skov, 207 Cal.App.4th at 702;

22 Mabry, 185 Cal.App.4th at 232.  "[A]ny 'assessment' must necessarily be simple—something on

23 the order of, 'why can't you make your payments?'"  Mabry, 185 Cal.App.4th at 232.  Further,

24 "any 'exploration' of options to avoid foreclosure must necessarily be limited to merely telling the

25 borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or

26 short sales), as distinct from requiring the lender to engage in a process that would be functionally

27 indistinguishable from taking a loan application in the first place."  Skov, 207 Cal.App.4th at 702;

28

---

[6] This legal standard relates to § 2923.5 as it existed in 2011, which is when Citi filed the Notice of Default.

1    Mabry, 185 Cal.App.4th at 232.  Section 2923.5 does not require the lender to modify the loan.

2    See Skov, 207 Cal.App.4th at 695-96.

3         With respect to the second method of compliance, statutory due diligence, in a nutshell the

4    statute "requires sending a letter by first class mail, making three attempts to contact the borrower

5    by telephone, and sending a certified letter if no response is received within two weeks of the

6    telephone attempts."  Intengan, 214 Cal.App.4th at 1056; see Cal. Civ. Code § 2923.5(g).  More

7    specifically, to meet the statutory "due diligence" requirement a mortgagee, beneficiary, or

8    authorized agent must:  (1) mail a letter to the borrower that includes the toll-free HUD telephone

9    number to find a certified housing counseling agency; (2) then call the borrower "by telephone at

10   least three times at different hours and on different days" using the borrower's primary telephone

11   number; (3) then, if the borrower has not responded to the telephone calls within 2 weeks, mail a

12   certified letter return receipt requested; (4) provide the borrower with a means of contact in a

13   timely manner, including a telephone number to a live representative during business hours; and

14   (5) post a link on the homepage of its Internet Web site that has (a) options to avoid foreclosure

15   for those who may be unable to afford their current payments, (b) a list of financial documents that

16   borrowers should collect and be prepared to present when discussing options to avoid foreclosure,

17   (c) a toll free telephone number for those who wish to discuss options to avoid foreclosure, and (d)

18   the toll free HUD telephone number to find a certified counseling agency.  See Cal. Civ. Code

19   § 2923.5(g); see Barrionuevo v. Chase Bank, N.A., 885 F.Supp.2d 964, 976-977 (N.D. Cal. 2012);

20   Argueta, 787 F.Supp.2d at 1107.

21        *Discussion*

22        a.    Evidentiary Objection

23        As indicated above, Bever makes 3 evidentiary objections against Alsiweadi's declaration.

24   Bever objects that the declaration does not comply with 28 U.S.C. § 1746, is not made on personal

25   knowledge, and does not comply with California Evidence Code § 1271 or Federal Rule of

26   Evidence 803(6).  The Court does not find merit to these objections.

27        First, the express representation of personal knowledge and the description of Alsiweadi's

28   employment with Citi are sufficient to demonstrate personal knowledge.  See Fed. R. Evid. 602;

1   See-Land Serv. v. Lozen Int'l, LLC, 285 F.3d 808, 819 (9th Cir. 2002); In re Kaypro, 218 F.3d

2   1070, 1075 (9th Cir. 2000).  Alsiweadi's declaration states, "I have personal knowledge of the

3   facts stated within this declaration . . . ."  See Alsiweadi Dec. ¶ 1.  Alsiweadi's declaration also

4   explains that she is a Business Operations Analyst, at all relevant times she has had access to

5   Citi's records regarding Bever's loan, she is familiar with Citi's methods for maintaining loan

6   files, and she has personally reviewed the relevant loan files.  See id. at ¶¶ 2-6.  There is nothing to

7   indicate that Alsiweadi's declaration is not based on personal knowledge.  Bever's objection is

8   overruled.  See Sea-Land, 285 F.3d at 819.

9          Second, California Evidence Code § 1271 is California's business records exception to the

10   hearsay rule.  See Cal. Evid. Code § 1271; People v. Beeler, 9 Cal.4th 953, 978 (1995).  In federal

11   court, admissibility of evidence is governed by the federal rules of evidence, not the California

12   Evidence Code.[7]  See Fed. R. Evid. 101; Primiano v. Cook, 598 F.3d 558, 563 (9th Cir. 2010);

13   United States v. Sacco, 491 F.2d 995, 1003 (9th Cir. 1974).  Both parties' discussion of and

14   reliance on Evidence Code § 1271 is improper.  See id.

15          Federal Rule of Evidence 803(6) provides the federal business records exception to the

16   hearsay rule.  Under Rule 803(6), business records are admissible when two foundational facts are

17   established: "(1) the writing is made or transmitted by a person with knowledge at or near the time

18   of the incident; and (2) the record is kept in the ordinary course of regularly conduct business

19   activity."  Sea-Land, 285 F.3d at 819; Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179,

20   1183 n.4 (9th Cir. 1988).  These two foundational facts must be established by the testimony of

21   the custodian of the records or other qualified witness.  See Fed. R. Evid. 803(6); Sea-Land, 285

22   F.3d at 820; Beyene, 854 F.2d at 1183 n.4.  It is immaterial that the business record is maintained

23   in a computer rather than in company books.  U-Haul Int'l v. Lumbermens Mut. Cas. Co., 576

24   F.3d 1040, 1043 (9th Cir. 2009).  Here, Alsiweadi's declaration describes her position within Citi

25   and states that:  (1)  she has had access to Bever's loan servicing file, (2) she is familiar with Citi's

26   methods for maintaining loan files, (3) the file is maintained in the ordinary course of Citi's

27

28   _____
    [7] There are limited exceptions to this rule, but there has been no showing that any exception applies in this case.  See
    Primiano, 598 F.3d at 563; Feldman v. Allstate Ins. Co., 322 F.3d 660, 666 (9th Cir. 2003).

1   business, (4) the entries in the file reflect interactions related to Bever's loan, (5) the entries in the

2   electronic documents are made at or near the time of an interaction in the ordinary course of Citi's

3   business, and (6) the entries are made by individuals who had personal knowledge of the events

4   and who were under a duty to accurately record the events.  See id. at ¶¶ 5-6.  These statements are

5   sufficient to meet the two foundational requirements of Rule 803(6).  See Sea-Land, 285 F.3d at

6   819-20; Beyene, 854 F.2d at 1183 n.4.  Although not entirely clear, it appears that Bever may be

7   contending that Alsiweadi is not a qualified witness to authenticate Citi's business records.

8   However, given Alsiweadi's employment with Citi and her knowledge of Citi's practices, there is

9   nothing to indicate that Alsiweadi is unqualified.  Bever's Rule 803(6) objection is overruled.  See

10  Fed. R. Evid. 803(6); Sea-Land, 285 F.3d at 819-20; Beyene, 854 F.2d at 1184 n.4; Frias, 2013

11  U.S. Dist. LEXIS 11287 at *8 n.1.

12       Finally, 28 U.S.C. § 1746 provides in part that whenever a matter is required or permitted

13  to be supported by a sworn declaration, the matter to be proved may be done so by an unsworn

14  declaration if the declarant dates the declaration and subscribes that the declaration is made "under

15  penalty of perjury, and is in substantially the following form: . . . (2) If executed in the United

16  States . . .:  'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true

17  and correct."  28 U.S.C. § 1746(2).  Here, Alsiweadi's declaration states in relevant part:  "I

18  declare under penalty of perjury under the laws of the State of California that the foregoing is true

19  and correct.  Executed this 14th day of July, 2014, at O'Fallon, Missouri."  Doc. No. 138-3.  Bever

20  does not explain how Alsiweadi's declaration violates this statute.  To the extent that Bever may

21  be complaining about the inclusion of "under the laws of the State of California," the declaration

22  still satisfies § 1746(2).  Section 1746 only requires substantial compliance.  See CFTC v.

23  Topworth Int'l, Ltd., 205 F.3d 1107, 1112 (9th Cir. 1999).  Courts have held that statements that

24  identify the law of a particular state as part of the penalty of perjury sentence are sufficient to meet

25  § 1746(2)'s requirements.  See Brantley v. Boyd, 2011 U.S. Dist. LEXIS 38099, *9 (N.D. Cal.

26  Apr. 1, 2011); Myrick v. Nationwide Mut. Ins. Co., 2008 U.S. Dist. LEXIS 1708, *5 n.1 (W.D.

27  Wash. Jan. 2, 2008); Slaughter v. Stewart Enters., 2007 U.S. Dist. LEXIS 56732, *6-*7 (N.D. Cal.

28  Aug. 1, 2007).  Bever's § 1746 objection is overruled.  See id.

1          b.      Civil Code § 2923.5

2                  1.      In-Person or Telephone Contact -- § 2923.5(a)(2)

3          The Court is not satisfied that Citi has shown that it contacted Bever and assessed his

4  financial condition and explored options to avoid foreclosure.  Bever expressly declares that

5  during the February 11 and 15, 2011 telephone calls, Citi did not provide the HUD toll-free

6  number to him, did not advise him that he could request a meeting, did not ask him questions

7  along the line of "why can't you make your payments?", and did not mention to him deeds in lieu,

8  workouts, short sales, "or the like."  See Bever Dec. ¶¶ 10-13.  Bever's declaration affirmatively

9  negates the required elements of "assessment" and "exploration."  Cf. Mabry, 185 Cal.App.4th at

10 232.  Because this is summary judgment, the Court accepts Bever's factual assertions as true.  See

11 Narayan, 616 F.3d at 899.  Therefore, the February 11 and 15 telephone calls did not fulfill

12 § 2923.5(a)(2)'s requirements.[8]

13         Citi argues that the prior telephone conversations that it had with Bever in 2009 and 2010

14 demonstrate that Bever's financial condition was assessed and options to avoid foreclosure were

15 explored.  The Court is not convinced.

16         Like the February 2011 telephone calls, Bever declares that most of the 2010 calls were not

17 to discuss loss mitigation, assess his financial condition, or explore options to avoid foreclosure,

18 nor did Citi ask questions like why he could not make his payments.  See Bever Dec. ¶¶ 8, 9.

19 Some calls in 2010 indicate that Bever explained why he had not made payments, but there is no

20 evidence that Citi explored options to avoid foreclosure or that Citi informed Bever of his right to

21 a subsequent meeting or gave Bever the toll-free HUD phone number.  Cf. Cal. Civ. Code §

22 2923.5(a)(2) with DUMF's 18, 19.  There is no undisputed evidence that any telephone calls in

23 2010 met the requirements of § 2923.5(a)(2).  Cf. Mabry, 185 Cal.App.4th at 232.

24         As for the June and September 2009 telephone calls, there is no dispute that these call met

25 the requirements of § 2923.5(a)(2).  See DUMF's 4-9; Doc. No. 148 at ¶¶ 4-9.  Nevertheless, the

26 Court does not find that reliance on the June and September 2009 calls is appropriate.

27

28 [8] The Court notes that the May 23, 2011, telephone call to Bever could not have satisfied § 2923.5 in this case, regardless of the substance of the call, because May 23 is less than 30 days from the June 3, 2011 notice of default. See Cal. Civ. Code § 2923.5(a).

1    Viewed in the light most favorable to Bever, the evidence shows that Bever cured the

2 delinquency in 2009.  From September 16, 2009 to March 8, 2010, Citi made no further attempts

3 to contact Bever, and took no further steps to foreclose on the loan.  Given Citi's conduct in 2011,

4 it is reasonable to infer that from September 2009 to March 2010, Bever's loan was current.

5    If a borrower is once again making loan payments and there is no delinquency, then

6 foreclosure is no longer an option.  The process of foreclosure in essence is back to square one.

7 Financial conditions and possible alternatives to foreclosure may change over time, in which case

8 an earlier "assess and explore" call would not fairly reflect the existing conditions relating to a

9 current delinquency.  With a possible change in conditions, a result other than foreclosure may

10 occur.  There is nothing particularly onerous about requiring a lender/lender's agent to contact the

11 borrower in connection with a new delinquency.  Such a call would address existing conditions,

12 and deal with existing options to avoid foreclosure.

13    The plain language of § 2932.5 is silent as to whether contacts made regarding prior

14 delinquencies are sufficient for later occurring delinquencies in preparation for filing a notice of

15 default.  See Cal. Civ. Code § 2923.5(a).  However, § 2923.5 was enacted in response to the

16 foreclosure crises.  Rossberg, 219 Cal.App.4th at 1493.  Section 2923.5's contact requirement was

17 intended in part "to change the foreclosure process so that avoidable foreclosures could be avoided

18 successfully."  Pantoja v. Countrywide Home Loans, 2013 Cal. App. Unpub. 1529, *17 (Feb. 28,

19 2013).[9]  An additional call to address the then existing conditions surrounding a current

20 delinquency appears consistent with the language and purpose of § 2923.5; a contact that is nearly

21 2-years old and in relation to a different delinquency does not.[10]

22    Given the periods of delinquency followed by a cure in this case, as well as the purpose of

23 § 2923.5, the Court cannot hold that the June and September 2009 telephone contacts are

24
25
[9] [9] Despite state rules, the Court may consider unpublished cases as persuasive authority.  See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003);  Altman v. HO Sports Co., 821 F.Supp.2d 1178, 1189 n.14 (E.D. Cal. 2011).

26
27 [10] Citi cites Avila v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS 100522 (N.D. Cal. July 18, 2012) and Dias v. JP Morgan Chase, N.A., 2014 U.S. Dist. LEXIS 87310 (N.D. Cal. June 25, 2014) to argue that as long as some calls were received at least 30 days prior to recording the notice of default, then § 2923.5 is satisfied.  However, the plaintiffs in Avila and Dias never argued that the earlier calls were insufficient because of the passage of time or an intervening cure of delinquency.  To the extent that Avila and Dias support Citi, the Court respectfully declines to follow them.

28

1   sufficient for § 2923.5(a)(2) and the February 2011 delinquency.  Bever's declaration creates

2   genuine issues of disputed material fact regarding telephone contact by Citi under § 2923.5(a)(2).

3   Summary judgment on this issue is inappropriate.

4            **2.**       <u>Due Diligence -- § 2923.5(g)</u>

5          The evidence before the Court indicates that Citi exercised due diligence under

6   § 2923.5(g).  First, on March 4, 2011, Citi sent Bever a letter that stated the account was in

7   default, provided the HUD toll-free telephone number, and provided a toll-free telephone number

8   to contact Citi.  <u>See</u> DUMF 25; Alsiweadi Dec. Exs. B, C.  This letter meets the requirements of

9   § 2923.5(g)(1).[11]  Second, Citi attempted to contact Bever more than three times on different dates

10  and at different times between March 4 and March 22, 2011.  <u>See</u> DUMF 26; Alsiweadi Dec. Ex.

11  B.  This meets the requirements of § 2923.5(g)(2).  Third, on April 4, 2011, Citi sent Bever a letter

12  via certified mail return receipt requested.  <u>See</u> DUMF 25; Alsiweadi Dec. Exs. B, C.  The letter

13  indicates that it deals with foreclosure avoidance, that Citi intends to continue with foreclosure,

14  Citi encouraged Bever to contact Citi at a toll-free number, and provided the toll-free HUD

15  number.  <u>See</u> Alsiweadi Dec. Ex. C.  The letter was also sent at least two weeks after Citi had

16  made at least three telephone attempts to contact Bever.  <u>See id.</u>; DUMF 26.  This letter meets the

17  requirements of § 2923.5(g)(3).  Fourth, Citi provided Bever with a toll-free telephone number to

18  contact it in the March 4, March 15, and April 4 letters.  <u>See</u> Alsiweadi Dec. Ex. C.  The toll-free

19  numbers in the March 4 and March 15 letters are identical, and those numbers would have

20  provided Bever with access to a live representative during business hours.  <u>See id.</u>; DUMF 25.

21  Citi met the telephone number requirement of § 2923.5(g)(4).  Fifth, it is undisputed that at all

22  relevant times, Citi maintained a website that had a toll-free HUD telephone number, a telephone

23  number to call Citi to discuss foreclosure avoidance options, options to avoid foreclosure and

24  instructions about obtaining information about those options, and a list of documents needed for

25  discussions about foreclosure avoidance.  <u>See</u> DUMF 33.  Citi's website met the requirements of

26  § 2923.5(g)(5).  Finally, the notice of foreclosure was filed on June 11, 2011.  <u>See</u> RJN Ex. B.

27

28  [11] The Court notes that the March 4 letter was amplified by the March 15 letter.  The March 15 letter stated that Citi was concerned about the delinquency, Bever could lose the Property through acceleration and foreclosure, but that Bever had options and should call Citi at a toll-free number.  <u>See</u> Alsiweadi Ex. C.

1    June 11 is more than 30 days after the April 4, 2011 letter.  Therefore, § 2923.5(a)'s minimum 30-

2    day time frame was met.

3           Bever has indicated that Citi did not leave messages when it called in March 2011.

4    However, the express language of § 2923.5 does not require that a telephone message be left.  The

5    requirement is that the lender or its agent call the borrower on three different days and at three

6    different times.  See Cal. Civ. Code § 2923.5(g)(2).  Here, Citi met and exceeded that requirement.

7    Between March 5 and March 21, Citi called Bever on 15 different dates, and each call was at a

8    different time of the day.[12]  See DUMF 26.

9           Bever has declared that he did not receive any letters from Citi between in March 2011 or

10   April 2011.  However, there is no requirement that Bever actually receive the two letters.  The

11   letters were mailed to Bever's address (one via certified mail return receipt request) and contained

12   the information required by §§ 2923.5(g)(1) and (g)(3).  In terms of the letters, that is all that

13   § 2923.5(g) requires.  See Cahill v. Mortgage, 2011 U.S. Dist. LEXIS 141587, *5-*7 (C.D. Cal.

14   Dec. 5, 2011) (denying injunction where lender submitted evidence of letters and call logs

15   demonstrating compliance with § 2923.5(g) despite borrower's contention that no letters were

16   received); cf. Gleason v. World Sav. Bank, FSB, 2012 U.S. Dist. LEXIS 133314, *5-*6 (N.D. Cal.

17   Sept. 17, 2012) (denying injunction in part were the lender's evidence tended to show statutory

18   due diligence requirements despite the absence of any actual contact); Knapp v. Doherty, 123

19   Cal.App.4t h 76, 88-89 (2004) (holding with respect to other notices required to foreclose that the

20   "trustor need not receive actual notice of the trustee's sale so long as notice is provided to the

21   trustor that is in compliance with the statute."); Lupertino v. Carbahal, 35 Cal.App.3d 742, 746-47

22   (1973) (". . . Civil Code sections 2924 – 2924h, inclusive, do not require actual receipt by a trustor

23   of a notice of default or notice of sale.  They simply mandate certain procedural requirements

24   reasonably calculated to inform those who may be affected by a foreclosure sale . . . ."); cf. also

25   Mabry, 185 Cal.App.4t h at 220 ("[Section 2923.5], of course, has alternative provisions in cases

26   where the lender tries to contact a borrower, and the borrower simply won't pick up the phone, the

27   phone has been disconnected, or the borrower hides or otherwise evades contact.").

28

---

[12] The Court notes that none of the calls were made at inappropriate times.  See DUMF 26.

1  Because Citi has shown that it met § 2923.5(g)'s due diligence requirements, summary

2  judgment on this issue is appropriate.  See Cahill, 2011 U.S. Dist. LEXIS 141587 at *5-*7; Cal.

3  Civ. Code § 2923.5(g).

4

5  **II.  RULE 54(b)**

6  Federal Rule of Civil Procedure 54 provides in relevant part, "When an action presents

7  more than one claim for relief . . . or when multiple parties are involved, the court may direct entry

8  of a final judgment as to one or more, but fewer than all, claims or parties only if the court

9  expressly determines that there is no just reason for delay."  Fed. R. Civ. Pro. 54(b).  In

10  determining whether there is "no just reason for delay," a "pragmatic approach that focuses on

11  severability and efficient judicial administration" is appropriate.  Wood v. GCC Bend, LLC, 422

12  F.3d 873, 880 (9th Cir. 2005).  District courts are to exercise their discretion under Rule 54(b) "in

13  the interest of sound judicial administration," and are to be mindful of the historic policy against

14  piecemeal appeals.  Id. at 882.  A Rule 54(b) judgment may be entered *inter alia* in connection

15  with the granting of a Rule 56 summary judgment motion, see Bushie v. Stenocord Corp., 460

16  F.2d 116, 118 n.2 (9th Cir. 1972), or a Rule 12(6) motion to dismiss.  See California E. Labs., Inc.

17  v. Gould, 896 F.2d 400, 402 (9th Cir. 1990).  District courts may enter a Rule 54(b) judgment *sua*

18  *sponte*.  Intergraph Corp. v. Intel Corp., 253 F.3d 695, 699 (Fed. Cir. 2001); State Treasurer v.

19  Barry, 168 F.3d 8, 14 (11th Cir. 1999); Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d

20  944, 947-948 (7th Cir. 1980); Martinez v. Columbia Sportswear USA Corp., 2011 U.S. Dist.

21  LEXIS 63840, *10 (E.D. Cal. June 15, 2011).

22  Here, all claims against MERS were dismissed without leave to amend in October 2013.

23  See Doc. No. 75.[13]  As part of the same order, the Court dismissed all claims against Citi without

24  leave to amend, except for the single § 2923.5 claim.  See id.  This order has now resolved the

25  § 2923.5 claim in favor of Citi.  Thus, there are no remaining claims against either Citi or MERS.

26  There is one defendant left in the case – Cal-Western.  Cal-Western was substituted as the

27  trustee by Citi in June 2011.  See Doc. No. 46 at Ex. C.  The FAC alleged claims of quiet title,

28  _____
[13] The dismissal was pursuant to a Rule 12(b)(6) motion that had been filed by MERS and Citi.  See Doc. Nos. 47, 75.

1  unjust enrichment, and 15 U.S.C. § 1692 against Cal-Western.  In June 2011, Cal-Western filed a

2  notice of bankruptcy.  See Doc. No. 71.  As part of the Court's October 2011 dismissal order, the

3  Court dismissed the entirety of the quiet title and unjust enrichment claims (which had been

4  alleged against all defendants) as invalid.  See Doc. No. 75.  Even though Cal-Western had filed a

5  motion to dismiss, the Court did not address that motion or the § 1692 claim because of the

6  automatic bankruptcy stay.  See Doc. No. 75.  To the Court's knowledge, Cal-Western's

7  bankruptcy proceeding is still on-going, and the automatic stay remains in effect.  It is unknown

8  when the automatic stay will be lifted or when the bankruptcy proceeding will conclude.

9        The only remaining claim in this case is under § 1692, and it is alleged against Cal-

10  Western only.  See FAC at pp. 18-20.  The § 1692 claim has no connection to Citi or MERS.  It is

11  true that the quiet title and unjust enrichment claims were made against all defendants, including

12  Cal-Western.  However, the unjust enrichment and quiet title claims against Cal-Western are not

13  significantly intertwined with Citi and MERS, and would not significantly implicate the danger of

14  piecemeal appeals.  Cal-Western had no involvement with Bever's loan or the deed of trust until

15  June 2011.  See Doc. No. 46 at Ex. C.  There is no indication that Bever paid any defendant any

16  funds in June 2011 or any time thereafter.  Thus, Cal-Western could not have been enriched by

17  Bever.  Further, Cal-Western was substituted as trustee to the deed of trust by Citi.[14]  See id.  For

18  purposes of quiet title, a mere trustee to a deed of trust does not have an interest in the underlying

19  real property.  See Duenas v. Ocwen Loan Serv'g, Inc., 2014 U.S. Dist. LEXIS 130612, *34-*35

20  (E.D. Cal. Sept. 16, 2014); Farias v. FCM Corp., 2010 U.S. Dist. LEXIS 122238, *10 (S.D. Cal.

21  Nov. 18, 2010); Wood v. Aegis Wholesale Corp., 2009 U.S. Dist. LEXIS 57151, *15 (E.D. Cal.

22  July 6, 2009); Fonvergne v. First Am. Lonestar, 2012 Cal.App. Unpub. 8149, *7 (Nov. 6, 2012).

23  Therefore, even if a reversal occurs as to either Citi or MERS and the unjust enrichment or quiet

24  title claims, the reversal would not impact Cal-Western.

25        Considering the nature of the dismissals that have occurred, the sole remaining claim

26  against Cal-Western, and the bankruptcy stay that is in place, the Court concludes that there is no

27  just reason to delay entry of judgment for Citi and MERS under Rule 54(b).  See Wood, 422 F.3d

28
---
[14] Given Cal-Western's bankruptcy, it is likely that Citi would substitute Cal-Western out as the trustee.

17

at 880, 882.  Soliday v. Miami County, 55 F.3d 1158, 1163 (6th Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 580-81 (1st Cir. 1994).  The Court will *sua sponte* order entry of judgment in favor of Citi and MERS under Rule 54(b).  See Fed. R. Civ. Pro. 54(b); Intergraph, 253 F.3d at 699; Barry, 168 F.3d at 14; Martinez, 2011 U.S. Dist. LEXIS 63840 at *10.

### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendant Citi's motion for summary judgment is GRANTED;

2.    Pursuant to Rule 54(b), because there is no just reason for delay, the Clerk shall enter judgment in favor of Defendants Citi and MERS;

3.    The preliminary injunction issued on October 2, 2013 (Doc. No. 76) is DISSOLVED; and

4.    This case shall remain open, but stayed, as to Defendant Cal-Western.

IT IS SO ORDERED.

Dated:   October 30, 2014                    _____

                                                        SENIOR  DISTRICT  JUDGE